STATE *ex rel.* ATTORNEY-GENERAL, Relator, *v.* GEORGE A. PEARCY, Respondent.

1. *Recorder of deeds — Buchanan county — Term of office — Construction of statute.*—By the special act of 1864 (Adj. Sess. Acts 1863, p. 502, §§ 1, 3), the Legislature intended to establish a term of office of two years for the recorder of Buchanan county, the officer to be elected at each successive general election. But the object of section 25, chapter 26, Gen. Stat. 1865, fixing the term of office of recorder, under certain conditions, at four years, was to fix an equal and uniform term throughout the State in all counties similarly situated, and embraced in its purview the county of Buchanan. Sections 1 and 3, p. 502, Adj. Sess. Acts 1863, so far as they fix a term of two years, are therefore repugnant to section 25, chapter 26, Gen. Stat. 1865, and null and void.

### *Information in the nature of a quo warranto.*

As appears from the petition of the attorney-general, under the act of February 9, 1864, establishing a recorder's office for the county of Buchanan, respondent was, in November, 1864, elected recorder of the county, and was again elected in November, 1866; and afterward, in the general election. held in November, 1868, one Alexander Bell was elected to the same office. But respondent, claiming to hold for four years from his last election, by virtue of the provisions of Gen. Stat. 1865, ch. 26, § 25, refused to yield possession, and this proceeding was instituted to test his right to the office.

*H. B. Johnson*, attorney-general, for relator.

*Strong*, and *Slayback*, and *Glover & Shepley*, for respondent.

The "act to establish the recorder's office for Buchanan county," approved February 9, 1864 (Adj. Sess. Acts 1863), does not provide for any election after 1864. There is no law of the State providing for any election in 1868. The only law authorizing an election for recorder is the general statute of 1865 (Gen. Stat. 1865, p. 161, § 25). Under this general statute Pearcy was elected for four years, commissioned and qualified. Pearcy, therefore, is entitled to the office, and the election of 1868 was void.

CURRIER, Judge, delivered the opinion of the court.

This is an information in the nature of a *quo warranto*, and is designed to test the right of respondent to the office of recorder of deeds of Buchanan county. He claims to hold the office in virtue of an election in 1866, for four years, under the provisions of the General Statutes (Gen. Stat. 1865, p. 159, ch. 26, § 25) and a commission issued to him in pursuance of such election. The relator insists that the election of 1866 was under the provisions of the special act separating the office of recorder from that of the clerk of the Circuit Court of that county. (Adj. Sess. Acts 1863, p. 502, § 1.)

State ex rel. Attorney-General, relator, v. Pearcy.

In disposing of the case it becomes necessary to construe these respective enactments. Two questions arise: First, did the special act of 1864 contemplate biennial elections, and an official term of two years, not only of the first incumbent, but of his successor as well? and secondly, if it did so establish a term of two years and biennial elections, are its provisions in that respect superseded by section 25, chapter 26, of the General Statutes?

The special act (section 1) provides that "at the general election in November, 1864, a recorder for the county of Buchanan shall be elected, * * * and that he shall hold his office for two years, and until his successor is elected and qualified." And the third section provides how "such *elections* for recorder" shall be held and conducted. The two sections read in connection may be understood as providing that the Buchanan county recorder shall be elected at the successive "general elections," the first incumbent being elected at the "general election" in 1864. If this is the true reading, then biennial elections are contemplated, and the term of office is fixed at two years, not only for the first incumbent, but also for his successors. If the word "elections" in the third section was purposely put in the plural, as it stands, it must refer to the biennial State elections, and not merely to the general election in 1864, mentioned in the first section. The first section employs the words "at the general election," etc., and the third section employs the words "such elections," apparently referring to a succession of general elections, of which the election mentioned in the first section was one. It may be urged with plausibility that the word "elections" in the plural, as it occurs in the third section, is an error, and that the true reading is "such election," referring to the single general election of 1864, mentioned in the first section. The act is sufficiently obscure, indefinite, and uncertain, it must be confessed. The reading, however, to be adopted must be determined by the general scope of the act and the well-recognized policy of the State, adverse to the continuance of men in office for long and indefinite periods. Unless the act, in sections 1 and 3, provides for refilling the office at the recurring general elections, as they occur biennially, it contains no provision for a second election, and the

party first elected, so far as the act is concerned, would hold indefinitely. That result could not have been intended.

Chapter 19, General Statutes, establishing the " office of register of lands," provides (section 2) that such officer shall be elected and " hold his office for two years, and until his successor shall be elected and qualified;" and chapter 128, in relation to public administrators, provides (section 1) for the appointment of such officer, and that he " shall hold his office for two years, and until his successor shall be qualified." There is nothing else in either act to determine the term of office of these officers, respectively. These general acts, by. fixing the term of the first incumbent at two years, have been regarded as thereby fixing a two-year term generally, involving biennial elections or appointments. Assuming, then, that the Legislature intended by the special act of 1864 to establish a term of office of two years, the officer to be elected at each successive general election, is the term of office enlarged by subsequent legislation of 1866 (Gen. Stat. 1865, ch. 26)? It was intended by the new constitution (article IV, § 27), and by the subsequent legislation under it, to correct and mitigate the evils of special legislation, and to establish a system of laws which should be uniform in their application to the same subject matter and circumstances in all the counties of the State.

It was, therefore, in the spirit of this system, provided, in regard to recorders of deeds and the separation of that office from the office of circuit clerk, that, in every county having a population of ten thousand inhabitants, it shall be lawful for the County Court to make an order separating the offices of circuit clerk and recorder of deeds. (Gen. Stat. 1865, ch. 26, § 23.) The subsequent sections of this chapter provide for the election, and define the duties, of such recording officers.

By section 25, it is enacted that " on the first Tuesday after the first Monday in November, 1866, and every four years thereafter, an election shall be held for the said office of recorder, in each county of the State where the offices of clerk of the circuit court and recorder of deeds have been separated."

It is thus seen that the Legislature framed a new law, which

went into operation for the first time in August, 1866, establishing a new system regulating recorders' offices, and providing for the election of recorders, which applied to "each county in the State where the offices of the clerk of the circuit court and recorder of deeds" had been separated. By its terms it applied to Buchanan county, for these offices had there been separated by the special act of 1864. It is to be borne in mind that at this time there were (so far as I have been able to find) but two counties in the State where this separation had then been effected, namely: St. Louis and Buchanan. By the prior law, which was a special provision incorporated in a general enactment (Rev. Code, 1855, ch. 132), the term of office of recorder of St. Louis county was fixed at six years. By the new system the term was cut down to four years. The term of the Buchanan county recorder, as we have seen, was two years. It was brought up to four years, to correspond with the reduced term of the St. Louis recorder, if the provision applied to Buchanan county at all. The Legislature was establishing a system which was intended to operate throughout the State, on its conditions being complied with, as well in Buchanan county as St. Louis.

It therefore reduced the long term of the one and raised the short term of the other. Its object was to fix an equal and uniform term, throughout the State, in all counties similarly situated. The provision took effect in St. Louis, and reduced the term. Did it have effect also in Buchanan? If the Legislature did not so intend, why was the St. Louis term interfered with at all? It is not improbable that the Buchanan act suggested the idea of framing a uniform system. That act indicated a movement, out of St. Louis, in the more populous counties, in favor of separating the offices of circuit clerk and recorder of deeds.

Apply to these facts the reasoning of the court in State *ex rel.* Vastine v. McDonald, 38 Mo. 529, and the conclusion that the new system in relation to recorders of deeds was intended for Buchanan county seems inevitable. So far as the Buchanan act is repugnant to that system, it is expressly repealed by chapter 224, section 2, of the General Statutes. It was the manifest

aim of the Legislature to produce uniformity. For that purpose it modified the special provisions of the laws relating to St. Louis, shortening the term; and it is not to be supposed that it was intended to exclude Buchanan, the only other county then subject to being affected by the adoption of these new laws. This would be at variance with the object in view.

The particular point decided in the Vastine case is not involved here, although the reasoning of the court·in regard to construing statutes applies. There it was manifest that the Legislature did not intend to disturb the special local act. The subsequent act contained nothing new. It was the mere re-enactment, in the course of a general revision, of an old law, precisely as it stood in 1855, long before the special act was passed. The special act was passed in view of the general law as it stood in 1855, and was a particular provision, *pari materia*, and to be construed in harmony with the general law.

The mere re-enactment in 1866 of the general law of 1855, in the course of a general revision of the statutes, it was very justly held, did not repeal or affect the special act of 1857, and for the reason that no such result could have been contemplated or intended. But the case at bar presents an entirely different state of facts. The subsequent act was no mere re-enactment of an old law, but a new enactment, creating an entirely new system, and, by its very words, including " each county in the State " situated as Buchanan and St. Louis counties were. The special act, so far as it fixed a term of two years, was repugnant to and inconsistent with the later enactment, and at variance with the system thereby established. It must therefore yield.

The writ is denied. The other judges concur.