THE STATE ex inf. JOHN T. BARKER, Attorney-General, v. H. I. DUNCAN et al.

### In Banc, April 2, 1915.

1. **STYLE OF CASES.** The use of the words "informant," "relator," and "respondent," and the proper style for a case in a petition for a writ in the nature of *quo warranto*, are discussed in this case; and it is *held*, that "informant" does not apply to the State, and the proper designation of the complainant in a prosecution by information in the nature of *quo warranto* is as "relator," and of him who is called upon to answer the information is as "respondent."

2. **TOWNSHIP ORGANIZATION: Voting It Out: Invalid Statute.** The statute (Sec. 11475, R. S. 1909) which requires a "majority of all the votes cast at said election" to vote out township organization in a county which has once legally adopted it, is contrary to section 9 of article 9 of the Constitution, which requires only "a majority of all the votes cast upon that question" to reject township organization; and to that extent at least the statute is invalid.

3. ————: ————: **Self-Enforcing Constitutional Provision: Supplying Invalid Hiatus in Statute.** So much of section 9 of article 9 of the Constitution as says that "in counties which have adopted 'township organization' the question of continuing the same may be submitted to the vote of the electors at a general election, in the manner that shall be provided by law," is not self-enforcing, and does not purport to be, for it specifically relegates to the Legislature the manner of submitting the question to the voters. But so much of it as says that "if a majority of all the votes cast upon that question shall be against township organization, it shall cease in said county; and all laws in force in relation to counties not having township organization shall immediately take effect and be in force in said county," is self-executing, and clearly needs no statute to put it in force. And these two clauses of the Constitution being divisible, so much of a statute as undertakes to prescribe the manner of submitting the question, as is separable from the

rest, may be constitutional and valid, and the hiatus in the rest of the statute resulting from an unconstitutional provision requiring a majority of all the votes cast at a general election to discontinue township organization, may be supplied by this self-enforcing part of the Constitution declaring that a majority of the votes cast on the question shall be sufficient.

4. ———: ———: ———: **Separable Valid and Invalid Provisions in Statute.** Where the entire statute is not built around the unconstitutional part, but that part is separable from the rest, the invalid part may be cut away, and the hiatus filled with a self-enforcing constitutional provision pertaining to the same subject; and if the valid part of the statute and the self-enforcing constitutional provision together constitute a workable plan, things done in pursuance thereto will be upheld.

5. ———: ———: ———: ———: **Valid Election: Appointment of County Collector.** So much of section 11745, Revised Statutes 1909, as provides for the manner of holding an election for the purpose of discontinuing township organization and submitting the question to the voters, is adequate for that purpose, and is in harmony with section 9 of article 9 of the Constitution declaring that "in any county which shall have adopted 'township organization' the question of continuing the same may be submitted to a vote of the electors of such county at a general election, in the manner that shall be provided by law," and is separable from the rest of the statute, and an election held in pursuance thereof is legal; but so much of said statute as requires "a majority of all the votes cast at said election" to be necessary to discontinue township organization, and so much of it as declares that in case township organization is discontinued "the county court shall appoint such county officers as is provided by law for counties not under township organization," are contrary to the further provision of section 9, article 9, of the Constitution, declaring that "if a majority of all the votes cast upon that question shall be against township organization, it shall cease in said county; and all laws in force in relation to counties not having township organization shall immediately take effect and be in force in said county," and those portions of the statute are likewise separable from the rest, and being invalid the said self-enforcing constitutional provisions, when those portions are cut away, supply the hiatus in the statute; and an election held in the manner provided by the statute, at which a majority of all the electors voting on the question but not a majority of all the electors voting at the election, voted to discontinue township organization, discontinued township organization in the county; and having been discontinued, the county court had no power to appoint a county collector, but that duty devolved upon the Governor.

6. ———: ———: **Appointment of County Collector.** Where town-
ship organization has been discontinued in a county at a legal
election at which a majority of the electors voting on the ques-
tion have · voted a'gainst township organization, the county
court has no power to appoint a county collector, and so much
· of section 11745, Revised Statutes 1909, as authorizes them to
appoint, is invalid, for the Constitution says that in such case
"all laws in force in relation to counties not having township
organization shall immediately take effect and be in force in
such county," and that contemplates the general statute author-
izing the Governor to fill vacancies in such county offices as
that of county collector.

*Quo Warranto.*

WRIT ALLOWED.

*John T. Barker,* Attorney-General, and *W. T.
Rutherford,* Assistant Attorney-General, for relator;
*Ed. L. Abington* and *Sam M. Phillips* of counsel.

(1)   Section 11745 to the semicolon in the seventh
line is not in contravention of any constitutional pro-
vision, and is not rendered invalid by the fact that
the remainder of the section is unconstitutional and
void.   A part of a section may be constitutional and
valid, while the remainder may be unconstitutional and
void.   State ex inf. v. Washburn, 167 Mo. 697; State
ex rel. v. Wright, 251 Mo. 336; State ex rel. v. Gor-
don, 236 Mo. 171; State ex rel. v. Taylor, 224 Mo. 474;
Ensworth v. Kurd, 68 Mo. 282; State ex rel. v. Warner,
197 Mo. 656; Simpson v. Iron Works, 155 S. W. 810;
State ex rel. v. Birch, 186 Mo. 215; State v. Kring,
74 Mo. 612; Birch v. Plattsburg, 180 Mo. 413; County
Court v. Griswold, 58 Mo. 182; State v. Whitaker, 160
Mo. 59.   (2)  Section 9 of article 9 of the Constitution
to the semicolon in line 4, addresses itself to the Leg-
islature, and is not self executing; while the remain-
der of the section is self-enforcing and addresses itself
to the courts.   A section of the Constitution may in part
address itself to the Legislature, and in part be self-

enforcing. Sharpe v. Biscuit Co., 179 Mo. 561; Woodward v. Redden, 135 Mo. App. 541; Railroad v. Board, 64 Mo. 294; Householder v. Kansas City, 83 Mo. 488. The Legislature has obeyed the part of the section addressed to it and has furnished a means to present to the voters of a county theretofore adopting it, the question of continuing township organization, by enacting the following sections: Section 11745, down to first semicolon in seventh line; Secs. 11652, 11653, 11654, 5828, R. S. 1909. The part of section 9, article 9, providing that township organization shall cease when a majority of the votes cast on that subject are against township organization, and that laws governing counties not under township organization shall immediately take effect, is self-enforcing. McGrew v. Railroad, 230 Mo. 547. (3) When township organization was defeated in Butler county, the laws of the State governing counties not under township organization immediately took effect in said Butler county, and the office of county collector *ipso facto* was created without an incumbent. Sec. 9, art. 9, Constitution; State ex rel. v. McMillan, 108 Mo. 153; State ex rel. v. County Court, 50 Mo. 317.

*David W. Hill* for respondent Duncan.

(1) The only part of Sec. 11745, R. S. 1909, which contravenes the Constitution are these words: "All the votes cast at said election." And that is the only part of Sec. 11745 that is unconstitutional. Sec. 9, art. 9, Constitution. (2) Section 9 of article 9 of the Constitution was in full force and effect at the time of the enactment of section 11745, and the purpose of that section of the Constitution and that section of the statute being the same, that is, to accomplish the abolishment of township organization, both must be read together, and when the invalid part of section 11745 is eliminated, and that section is read with section 9 of

article 9 of the Constitution, a symmetrical, reasonable law, accomplishing the intent of the people, remains. (3) In any conflict between Sec. 5828, R. S. 1909, under which plaintiff claims the Governor has the right to make the appointment of county collector, and section 11745, the former section must yield to the latter, because of the later enactment of the latter section. (4) The Legislature had the right to enact section 11745, by virtue of the following provision of the Constitution: "When any office shall become vacant, the Governor, unless otherwise provided by law, shall appoint a person to fill such vacancy, who shall continue in office until a successor has been duly elected or appointed and qualified according to law." Sec. 11, art. 5, Constitution. (5) The plaintiff is attempting to convict the Legislature of doing a useless and unreasonable thing in enacting section 11745, but the court, in construing the statute, will not convict the Legislature of doing a useless or unreasonable thing unless there is no other reasonable construction possible. Hawkins v. Smith, 242 Mo. 688. (6) The plaintiff asks the court to say that the Legislature meant "township officers" when it used the words "county officers" in section 11745, but the courts will not import language into the body of a legislative enactment not necessarily required in order to accomplish the purpose for which it was enacted. Head v. Insurance Co., 241 Mo. 403. (7) Where a court may strike out certain words from the section of a statute, and thereby harmonize all of the provisions of the statute, it is authorized to do so if the provisions of the statute cannot be otherwise harmonized, as it is the presumption that the Legislature never intended to enact an absurd law, incapable of being intelligibly enforced. Bingham v. Birmingham, 103 Mo. 345. (8) The words "county officers," used in section 11745, must be taken in their plain and usual sense. Sec. 8057, R. S. 1909; State ex rel. v. Imel, 242 Mo. 293.

*L. M. Henson* and *Sheppard, Green & Sheppard* for remaining respondents.

(1) The facts alleged in the replication are not sufficient in law to disclose a maintainable replication. State ex rel. v. McGowan, 138 Mo. 187; State ex rel. v. Gibson, 195 Mo. 251; State ex inf. v. Munn, 201 Mo. 214; School Board v. Patten, 62 Mo. 444; State ex rel. v. Railroad, 74 Mo. 163; State ex inf. v. Russell, 197 Mo. 633; Spraigue v. Thompson, 118 U. S. 91; Sec. 9, art. 9, Constitution; Sec. 11745, R. S. 1909. (2) Sec. 11745, R. S. 1909, is null, void and of no force and effect, because it is in violation and contravention of the provisions of section 9 of article 9 of the Constitution of Missouri. State ex rel. v. Brassfield, 67 Mo. 331; State ex rel. v. Wilder, 199 Mo. 503; State ex rel. v. McGowan, 138 Mo. 187; State ex rel. v. Gibson, 195 Mo. 251; State ex inf. v. Munn, 201 Mo. 214. (3) Section 9 of article 9 of the Constitution of Missouri is not self-executing. State ex rel. v. McGowan, 138 Mo. 187; State ex rel. v. Gibson, 195 Mo. 251; State ex inf. v. Munn, 201 Mo. 214; State v. Kyle, 166 Mo. 287; School Board v. Patten, 62 Mo. 444; State ex rel. v. Railroad, 74 Mo. 163; State v. Railroad, 75 Mo. 526; Jerman v. Benton, 79 Mo. 148; Arnold v. Hawkins, 95 Mo. 569; Railroad v. Buchanan County, 39 Mo. 485. (4) Sec. 11745, R. S. 1909, is not separable, as its purpose is to accomplish a single object only; and one provision being void, the whole must fail. Cooley's Const. Lim., p. 177; 8 Cyc. 753, 758-9, note 63; 6 Am. & Eng. Ency. Law (2 Ed.), 1088, 1089; County Court v. Griswold, 58 Mo. 199; Railroad v. Brick Co., 85 Mo. 307; State ex rel. v. Field, 119 Mo. 613; Copeland v. City, 126 Mo. 428; Grimes v. Eddy, 126 Mo. 186; Spraigue v. Thompson, 118 U. S. 91. (5) That the election of 1914, pleaded in informant's replication, in so far as it relates to the question of continuing township organization in force in Butler county, was void and of no effect for the rea-

son that there was no valid law in force in this State authorizing the submission of the question of continuing in force township organization in said county. See authorities cited above. (6) There is no such office in existence at this time, nor has there been since township organization went into effect in 1912, as the office of county collector of Butler county, Missouri.

FARIS, J.—This is an original proceeding by information in the nature of *quo warranto,* brought by the Attorney-General, for the purpose of determining the rights of the respondents to the several offices of collector of the revenue of Butler county and of collectors of the several townships in said county.

The matter is before us on the pleadings; such issues having been made up thereby as concede the facts upon which the case turns. Briefly stated these facts are as follows: At the general election held in Butler county in November, 1912, that county adopted the provisions of the statute relating to township organization. Following such adoption respondents herein, except H. I. Duncan and I. H. Barnhill, were elected collectors of the several townships in said county. The respondent Barnhill is the treasurer of Butler county and pursuant to the statutes governing township organization is *ex-officio* collector of the revenue thereof. Upon the presentation of a sufficient petition to the county court, the proposition to discontinue township organization was properly submitted to the voters of Butler county at the general election held therein in November, 1914. At this election some thirteen hundred votes were cast in favor of the proposition to discontinue and some eight hundred votes against the discontinuance thereof. While of those actually voting upon the proposition of discontinuing, some two-thirds majority concurred in voting township organization out, yet the number of voters voting for a discontinuance was not a majority of the whole vote cast at said election; since

the total number of votes cast at the general election in Butler county in 1914 amounted to some forty-two hundred or more. We do not give the exact figures, since they are in nowise material; there being no contention upon the facts; the issues being upon the law.

Upon the canvass of the votes cast for and against township organization, the county court found that such organization had been discontinued by the result of the election held, and said court thereupon proceeded to appoint respondent H. I. Duncan as collector of the revenue of Butler county to fill the vacancy which said court deemed to have ensued by reason of the result of the election aforesaid. There is no contention made that all of the respondents are not in every way qualified to hold the disputed offices. This fact is conceded by all adversary parties.

A controversy arose after the appointment by the county court of respondent Duncan as to the right of said court to appoint county officers, particularly to fill the office of collector of the revenue in a county which had voted out township organization. Thereupon one Carl C. Abington, likewise in every way qualified, as is conceded, to fill the office, applied to the Governor of Missouri for the appointment as collector, who thereupon appointed and commissioned him as such.

If, therefore, in order to discontinue township organization in a given county, it be sufficient for a majority only of those voting upon the proposition to vote in favor of discontinuing such organization, then a vacancy exists in the office of collector of the revenue of said county and likewise in the several offices of collectors of the several townships of that county and respondents, unlawfully assuming to fill these offices, should be ousted. If such vacancy exist, as between the county court and the Governor of Missouri, in whom is the power vested by the Constitution and the statutes to fill this office? These are the points which we are

265Mo.

called upon to discuss upon the facts set out, and toward these points the subjoined discussion will be directed.

I. As a foreword of no vital importance to the case, but in order to settle a minor matter of practice which is causing useless confusion, we observe that this case comes to us styled "State of Missouri *ex informatione,* John T. Barker, Attorney-General, Informant, versus H. I. Duncan et al. (naming all **Style of Case.** of them), Defendants." No objection on account of thus styling the cause has been lodged with us, but the lack of uniformity prevailing makes the moment fitting for a brief discussion touching its correctness. We can see no reason, and can find none sufficient among the authorities, for styling the complainant an *informant.* Such use of the word to designate a plaintiff or complainant is wholly local and indigenous to this State. The dictionaries do not so recognize the word; likewise neither the encyclopedias nor the law dictionaries so use it. To be logical we ought to say, "State of Missouri upon the information of the Attorney-General, informant, *plaintiff.*" For strictly speaking the State of Missouri is not the informant, but the Attorney-General is the one who informs us; the State of Missouri is the one aggrieved, and in whose action for redress the information is conveyed to us by the chief law officer. In criminal prosecutions either the prosecuting attorneys of the several counties or the Attorney-General informs the criminal court, but the State of Missouri is nevertheless simply a plaintiff.

While it is but little more logical to style the complainant in a prosecution by information in the nature of *quo warranto,* a relator, yet the practice of so styling the one standing in the place of a plaintiff is well-nigh universal. [2 Spelling on Extraordinary Remedies (2 Ed.), secs. 1788, 1848; High, Extraordinary

Remedies (3 Ed.), sec. 629a; Burrill's Law Dictionary; Black's Law Dictionary; Bouvier's Law Dictionary; 34 Cyc. 1038.] "A relator," says Burrill, "is an informer; a person in whose behalf certain writs are issued such as . . . informations in the nature of a *quo warranto*." Black says that a relator is "the person upon whose complaint, or at whose instance, an information, or writ of *quo warranto* is filed and who is *quasi* the plaintiff in the proceeding." Moreover, our statute plainly recognizes as proper the designation of the complainant as a relator. [Secs. 2631, 2632, R. S. 1909.] Our Missouri cases, except a negligible few only, also denominate the one complaining a relator. [State ex rel. v. Vail, 53 Mo. 97; State ex rel. v. Lupton, 64 Mo. 415; State ex rel. v. Claggett, 73 Mo. 388; State ex rel. v. Francis, 88 Mo. 557; State ex rel. v. Meek, 129 Mo. 431; State ex rel. v. Lawrence, 38 Mo. 535; State ex inf. v. Lindell Ry. Co., 151 Mo. 162; State ex rel. v. Pearcy, 44 Mo. 159; State ex inf. v. Kansas City, 233 Mo. l. c. 171; State ex rel. v. McSpaden, 137 Mo. 628; State ex inf. v. Corcoran, 206 Mo. l. c. 10; State ex inf. v. Amick, 247 Mo. l. c. 280; State ex rel. v. Wright, 251 Mo. 325.] After a somewhat exhaustive search we have been able to find only some eight or ten cases wherein the Attorney-General, filing of his own initiative informations in the nature of *quo warranto*, has styled the complainant an informant, and but two only in which this court in its opinion has so designated the complainant. There may be others of both classes, but we have not found them. Further illustrating this useless confusion we note that in the style of the case of State ex inf. Atty.-Gen. v. Bland, 144 Mo. 534, the complainant is called an "applicant;" in the case of State ex rel. Atty.-Gen. v. Steers, 44 Mo. 223, complainant is called a "petitioner;" in the two cases of State ex inf. Atty.-Gen. v. Fleming, 158 Mo. 558, and State ex inf. Atty.-Gen. v. Standard Oil Co., 218 Mo. 1, the complainant is referred to as the "informant;"

while as stated, in the cases first supra in this paragraph and a full score or more of others not cited, the complainant is called the "relator."

If it be said that the word "informant" is used to distinguish the cases brought by a prosecuting officer upon his sole initiative, from those cases which are brought by a private person through the official aid of such prosecuting officer, then the distinction is wholly useless, since it is fully and sufficiently connoted by the use of the words "*ex informatione,*" even granting for argument's sake, such use is any more necessary in this sort of case than it is in a criminal prosecution, which in a precisely similar way is often brought by a prosecuting officer upon his sole initiative. Practically all other States of the Union use the designation relator, and the use of the word "informant" is unknown in these other jurisdictions. [State ex rel. v. Price, 50 Ala. 568; People ex rel. v. Woodbury, 14 Cal. 43; State ex rel. v. North, 42 Conn. 79; People ex rel. v. Riordan, 73 Mich. 508; State ex rel. v. Smith, 55 Tex. 447; State ex rel. Atty.-Gen. v. McCullough, 20 Nev. 154; People ex rel. v. Hilliard, 72 N. C. 169; Com. ex rel. v. Heilman, 241 Pa. St. 374.] The case of State ex rel. v. McMillan, 108 Mo. 153, does not, as we read it, require any such practice; the point held in judgment there being as to the right of the Attorney-General to bring such a proceeding at all, absent a private interested relator, and not the form of his bringing action. [State ex rel. v. Rose, 84 Mo. 198; State ex inf. v. Loan Association, 142 Mo. 325.]

So also the practice is to style him who is called to answer the information in the nature of *quo warranto* a "respondent." [2 Spelling on Extraordinary Remedies (2 Ed.), secs. 1788, 1848; High on Extraordinary Remedies (3 Ed.), sec. 629a; 34 Cyc. 1038; Burrill's Law Dictionary.] "A respondent," says Burrill, "is a party answering." Concededly this designation of a defendant, or him who answers (the history of the

law regarded), belongs more nearly to equity and proceedings in admiralty than to the common law side, yet the great weight of practice is to so style a defendant in a proceeding like the instant case. [2 Spelling on Ex. Rem., supra; High on Ex. Rem., supra; 32 Cyc. 1447.] While the Missouri cases seem to use the terms confusedly and interchangeably (See State ex rel. v. Claggett, 73 Mo. 388; State ex rel. v. Francis, 88 Mo. 557; State ex rel. v. Lawrence, supra; State ex inf. v. Loan Association, 142 Mo. 325; State ex rel. v. Kupferle, 44 Mo. 154; State ex rel. v. McMillan, 108 Mo. 153; State ex rel. v. Pearcy, supra; State ex inf. v. Standard Oil Co., 218 Mo. 1; State ex rel. v. Rose, supra; State ex inf. v. Arkansas Lumber Co., 260 Mo. 212; State ex rel. v. Wright, 251 Mo. 325; State ex inf. v. Kansas City, supra, which use the designation respondent; and State ex rel. v. Lupton, 64 Mo. 415; State ex rel. v. Vail, 53 Mo. 97; State ex inf. v. Bernoudy, 36 Mo. 279; State ex rel. v. Meek, 129 Mo. 431, which use the term defendant), and while outside of the great weight of practice as shown by the textbooks and the adjudged cases, there is not any very satisfactory reason in either analogy, history or logic to style him a respondent who in a proceeding in *quo warranto* is called on to make his answer, yet such is by the weight of authority the well-nigh universal practice, and we ought to defer to it, so that uniformity may serve to prevent confusion and avoid obscurity. We think, therefore for these reasons that in original informations in the nature of *quo warranto* it is the better practice to style the complaining party the "relator" and him who is called to answer, the "respondent." Accordingly of our own motion, we use these designations in expressing our views herein.

And now passing over and not deciding, because not raised by the pleadings or otherwise, the questions whether (a) the State may itself maintain this action involving a county office, absent a relator interested in

such office (Cf. Sec. 2631, R. S. 1909, and 32 Cyc. 1441; State ex rel. v. Bryan, 50 Fla. 293) and (b) whether such action is jointly maintainable without leave of court against divers respondents who claim title to different offices under diverse claims (Cf. Sec. 2633, R. S. 1909; 2 Spelling, Extraordinary Remedies (2 Ed.), sec. 1839, and 32 Cyc. 1447, and cases cited), we come to the points in the case.

II. While the questions raised are numerous and the contentions variant and diverse, the points which are decisive fall within a small compass and are not, as appears to us, peculiarly difficult.

It is obvious that Barnhill and the nine township collectors are all in precisely the same legal attitude. All parties to this record concede that township organization was heretofore properly adopted and was in force in Butler county, unless at the election held in November, 1914, it was legally voted out. Barnhill and nine others of the respondents say it was not legally voted out and therefore they are *ex-officio* county collector and collectors of the several townships, respectively. (We shall hereinafter for brevity, refer to Barnhill and the nine township collectors, whose legal rights, privileges and conditions are identical, simply as respondent Barnhill.) Respondent Duncan and relator on the contrary both contend that township organization was legally voted out, and both concede that it was thereupon the duty of the proper appointing power to fill the vacancy thereby created in the office of collector of the revenue of said Butler county. The bone of contention between Duncan and relator is, however, touching the proper appointing power. Respondent Duncan says that by section 11745 of our statute this power is lodged in the county court of Butler county; relator says that so much of said section 11745 as confers power upon the county court to fill this vacancy

*Township Organization: Issues.*

is contrary to the provisions of section 9 of article 9 of the Constitution, and that the power of appointment is therefore lodged in the Governor pursuant to the general statute which provides for the filling of all ordinary vacancies in county offices. [Sec. 5828, R. S. 1909; Sec. 11, art. 5, Constitution of Mo. 1875.] Thus, in brief, the several contentions. We will look to these in their order.

III. The statute which has served to produce the several diverse contentions above noted is as follows:

"Sec. 11745. At any general election holden in this State, in any county having adopted township organization under this chapter, upon the petition of one hundred voters of the county, praying the

**Invalid Statute.**
county court to resubmit the question of township organization to the voters at said election, it shall be the duty of the county court to submit the question again at such election, in like manner as provided in article 1 of this chapter; and if it shall appear, after the canvass of the votes as provided in article 1 of this chapter, that a majority of all the votes cast at said election were against township organization, then such county shall be declared to be under the general laws of the State in relation to its local government, and to have rejected township organization, and the county court shall, at the first meeting thereafter, appoint such county officers as provided by law in counties not under township organization, and such officers, when so appointed, shall hold their offices and discharge the duties thereof in like manner as officers elected in counties never having adopted the provisions of this chapter."

It is plain that if the above section is constitutionally valid it settles this case. For it is conceded for all of the purposes of this action that, while a majority of those voting upon the proposition of retaining township organization voted against so retaining it, a majority of all the electors voting in Butler county at

the election of November, 1914, did not so vote. The relator seems to assume that the position of respondent Barnhill is that the above section is constitutional. We do not so view his position. The point he urges cuts deeper than that. He urges the constitutional conflict and resultant invalidity of *the whole of section 11745 supra,* which section among other things requires "a majority of all of the votes cast at said election" to be against the retention of township organization, for that it is right in the teeth of section 9 of article 9 of the Constitution, which reads thus:

"In any county which shall have adopted 'township organization,' the question of continuing the same may be submitted to a vote of the electors of such county at a general election, in the manner that shall be provided by law; and if a majority of all the votes cast upon that question shall be against township organization, it shall cease in said county; and all laws in force in relation to counties not having township organization shall immediately take effect and be in force in such county."

And so learned counsel for respondent Barnhill say that since the above quoted provision is unconstitutional, the Legislature has failed and neglected to legislate at all upon the subject of voting to discontinue township organization. In short, that the lawmaking body has not availed itself of the power committed to it by the section, supra, of the Constitution, of providing by law for the submission of the question of the retention of such organization to a vote of the electors of a county at a general election. Their attitude then is that the Legislature had the power to do this; it did it; *but by a statute which is invalid;* therefore it did not do it at all.

Nothing can be plainer than that so much of said section 11745 as requires a larger vote in any county to discontinue township organization than that required by the Constitution (Sec. 9, art. 9, supra), itself is in-

valid. There can be no two views as to this. It is equally plain also that so much of said section 11745 as prescribes for a given county after it has voted out township organization a government or procedure differing from that of a county which has never adopted such organization, is likewise invalid. Of this, however, more hereafter.

Unless therefore we may cut out of section 11745 the portions thereof which are unconstitutional and leave the residue valid, and unless section 9 of article 9 of the Constitution is partially, at least, self-executing, the condition exists in this State that all those counties which have township organization must retain it till the Legislature shall have enacted a valid law which will permit a vote to be had upon the question of getting rid of it.

IV. Is section 9 of article 9 of the Constitution self-executing? It is fairly plain that so much of this section as says that "in any county which shall have adopted 'township organization,' the question of continuing the same may be submitted to a vote of the electors of such county at a general election, in the manner that shall be provided by law," is by no possible view, or by any recognized canon of construction, self-executing. It is equally clear on the other hand that so much of this section as provides that "if a majority of all the votes cast upon that question shall be against township organization, it shall cease in said county; and all laws in force in relation to counties not having township organization shall immediately take effect and be in force in said county," is self-executing.

Self-Enforcing Constitutional Provisions: Supplying Hiatus In Statute.

This view is held upon the first proposition, viz., that the portion of this section first above quoted is not self-executing, for reasons that are plain and conclusive. The clause first above quoted does not pur-

port to be self-executing; on the contrary upon its face and by its very words it specifically relegates to the Legislature the duty of providing by law for the manner of submitting the question of discontinuence of township organization to the electors of a county having theretofore adopted it. It would be a contradiction in terms to hold it self-enforcing and the citation of authority could add neither weight nor clarity to this view. On the other hand the last clause is just as obviously self-executing. For it is clear that it needs no statute to put it in force. Any statute about the matter must needs follow the precise words or the very substance of the Constitution itself and no statute which could be passed could clarify the matter in any respect whatever. Indeed, the clause under discussion merely expresses a status which will instantly result from the election required to be held. Statutory language would be impotent to add aught to the Constitution's expression of this resulting status, and so the clause is self-executing. It is a provision complete in itself and needs no legislation to put it in force. [Davis v. Burke, 179 U. S. 399; Hyatt v. Allen, 54 Cal. 353; Eau Claire Nat. Bank v. Benson, 106 Wis. 624.] For automatically upon holding an election, the conditions required being met in the result of such election the status mentioned instantly ensues.

In the case of Lyons v. Longmont, 54 Colo. l. c. 117, the Supreme Court of Colorado said: "Constitutional provisions are self-executing when it appears that they shall take immediate effect, and ancillary legislation is not necessary to the enjoyment of the right thus given, or the enforcement of the duty thus imposed. In short, if a constitutional provision is complete in itself, it executes itself."

Likewise discussing this question the Supreme Court of the United States said in the case of Davis v. Burke, supra, at page 403: "Where a constitutional provision is complete in itself it needs no further leg-

islation to put it in force. When it lays down general principles . . . it may need more specific legislation to make it operative. In other words, it is self-executing only so far as it is susceptible of execution. But where a constitution asserts a certain right, or lays down a certain principle of law or procedure, it speaks for the entire people as their supreme law, and is full authority for all that is done in pursuance of its provisions.''

. But as stated above, neither authority nor argument can make clearer the patent conclusion that the first clause of section 9 of article 9 of the Constitution, supra, down to the first semicolon, is not self-executing, but that it requires legislation to carry it into effect; and that the remainder of this section is self-executing. No reason can be seen why such a condition is not permissible under the facts here; that is to say, why one clause of a given section of a constitution may not be self-executing and another clause or clauses of the same section not self-executing. Indeed, we have held that such a condition may exist without doing violence to the organic law. [Sharp v. Biscuit Co., 179 Mo. 553.] The matter with which this section of the Constitution was dealing is divisible. The said first clause gave authority to the Legislature to provide by a written law for the manner in which the question of continuing township organization should be submitted to the voters, and since so much of it is not, as we have seen, self-executing, therefore unless the Legislature has by a constitutional statute provided some manner of submitting the question to the voters, it cannot be submitted nor voted on till the Legislature does provide a valid law therefor, and the election held in Butler county would be invalid.

Returning to a consideration of the first clause of section 11745, supra, we note that it says:

''At any general election holden in this State, in any county having adopted township organization un-

der this chapter, upon the petition of one hundred voters of the county, praying the county court to resubmit the question of township organization to the voters at said election, it shall be the duty of the county court to submit the question again at such election, in like manner as provided in article 1 of this chapter;''

No one upon the instant record. specifically attacks the constitutionality of so much of this section. The contention in substance is that it is not sufficient to bridge the hiatus, and that so destructive a constitutional inroad having been made on that language of this section which follows the first semicolon therein, the whole section for this reason falls. We do not think this follows. The applicable rules of construction in such case are fairly well settled. In the case of State ex rel. v. Wright, 251 Mo. l. c. 336, we took occasion to say:

''We need not cite numerous cases from other jurisdictions or load down this opinion with textbook excerpts in order to prove that part, a section, a sentence or a clause of a statute may be constitutionally invalid and the remainder good. We may merely say that this is a rule wholly or well-nigh universal in all common-law jurisdictions, and one to which this court has lent its concurrence. VALLIANT, J., in the case of State ex inf. v. Washburn, 167 Mo. l. c. 697, said: 'The point is advanced that if the Act of 1899 is unconstitutional in the particular named, the whole act is void and the incumbent has no title to the office. The power attempted to be conferred on the partisan committee is not an essential element in the whole act. Where the part of an act that is unconstitutional does not enter into the life of the act itself, and is not essential to its being, it may be disregarded and the rest remain in force; that is this case.'

''This view was expressly approved in the later case of State ex rel. Tolerton v. Gordon, 236 Mo. l. c. 176, where the court says, referring to the Washburn

case: 'The court also held that although the part of the act providing the manner of making the appointment in order to secure a bi-partisan board was void, the remainder of the act was valid, and the court upheld the appointment made by the Governor contrary to the express requirement of law.'

"As was so aptly stated by GRAVES, J., in his concurring opinion in the Tolerton case, 1. c. 186: 'From it (the law of 1899—which is in this particular precisely similar to the law of 1911, now under discussion), however, we carve out one of the vital things in the minds of the legislative body, and say enough is left to make a good law.'

"We cannot state the rule better or more briefly. We might state it in different language, by saying that, if after cutting out and throwing away the bad parts of a statute, enough remains, which is good, to clearly show the legislative intent, and to furnish sufficient details of a working plan by which that intention may be made effectual, then we ought not as a matter of law to declare the whole statute bad. [Cooley on Con. Lim. (7 Ed.), 247; State ex rel. v. Gordon, 236 Mo. 1. c. 171; State ex rel. v. Taylor, 224 Mo. 1. c. 474; State v. Bockstruck, 136 Mo. 335.]"

Similar is the holding in the case of State ex rel. Bixby v. St. Louis, 241 Mo. 1. c. 246, where the discussion took a broader range, and threw light upon the proposition from a different angle, and wherein it was said:

"We shall not undertake to re-examine or re-formulate the learning on the question. The books are full of it and counsel on both sides cite cases decided by this court, and text-writers, showing under what circumstances an unconstitutional and therefore dead provision may be pruned from the main stem of a law without impairing the stem itself. The prying mind can consult the reporter's head notes for them. There is a very late case, State ex rel. v. Gordon, 236 Mo.

l. c. 170 et seq., where the matter was in judgment and the right doctrine is announced. Briefly, the touchstone whereby a correct conclusion is to be reached will be found in correct answers to these questions: Is the entire law built up around the unconstitutional proviso? Are all the provisions of the enactment inseparable, and so interwoven and connected as to be interdependent? Does the statute attempt to accomplish instead of two objects (one valid, the other invalid) only one object and that one invalid? Does the proviso furnish the inducement, the consideration, the legislative motive for the whole act? Is it apparent that but for the proviso the Forty-fourth General Assembly would not have enacted the law? With the proviso cut away is there left only an incomplete enactment, one not symmetrically rounded out and, therefore, incapable of enforcement? If those questions must be judicially answered, yes, then the whole act falls to the ground with the proviso—if, no, then the law, bad in part, may be good in part; for the courts in this behalf do not apply the ideas shadowed forth in the metaphors of Paul and Solomon where the one speaks of a little leaven that leaveneth the whole lump, and the other comments on the all-pervading and unsavory effect of dead flies in the apothecary's ointment.''

Considered in the light of the holdings in the above cases and those cited therein, it is fairly obvious that the first clause of section 11745 down to the semicolon in line seven, is constitutional, and this we think follows without invoking the rule of reasonable doubt (State v. Baskowitz, 250 Mo. 82, and cases cited), or the rule of violent presumption in favor of validity, as the cases hold may be done. [State ex rel. Bixby v. St. Louis, supra.]

We are likewise keenly mindful of those cardinal rules for the construction of a statute which enjoin upon us such an interpretation as ascertains and gives effect to the intent of the lawmakers (State ex

rel. v. Seehorn, 246 Mo. 568; State ex inf. v. Amick, 247 Mo. 271), and that if consistent with such intent and the reason of the thing we ought to adopt that construction which will save such statute and make it operative. [Spicer v. Spicer, 249 Mo. 582.]

It will be seen that said first clause of section 11745, supra, provides that upon the coming in to the county court of any county having theretofore adopted township organization, of a petition of one hundred voters of the county, to resubmit the question of township organization to the voters at any general election "it shall be the duty of the county court *to submit the question again at such election, in like manner as provided in article 1 of this chapter.*" It must be noted that the question of the retention or the discontinuance of township organization, as we above herein have loosely used these words for clarity's sake, is not specifically referred to in the language of this section under discussion. The words used connote a submission of the question to a vote just as though no election had ever been had, or having been had the proposition had been defeated. Turning then to article 1 of chapter 119, Revised Statutes 1909, referred to in the said first clause of section 11745, supra, we find it providing among other things, as follows:

"Sec. 11653. The county court, on petition of one hundred legal voters of said county, shall cause to be submitted to the voters of the county the question of township organization under this article, by the ballot, to be written or printed, 'for township organization,' or 'against township organization,' to be canvassed and returned in like manner as votes for State and county officers.

"Sec. 11654. The clerk of the county court shall cause an abstract of the returns of said election to be made out and certified as in election for State and county officers, record the same at length upon the

records of the county court of the county, and shall certify the same to the Secretary of State.''

If we read said section 11653 in connection with that part of section 9 of article 9 of the Constitution which we have already held to be self-executing, we find that a workable scheme is prescribed amply sufficient to hold an election and thereby rid a county so desiring, of township organization, which obviously would otherwise be a veritable ''old man of the sea,'' which once lodged upon the back of a county would be shaken off only by more legislation.

The view we take above takes some considerable color from the fact that it has been held that *an invalid election held to adopt township organization* may be validated *by the result of an election held to discontinue it,* when at such election to discontinue a proper majority vote is cast to retain it. [State ex inf. v. Russell, 197 Mo. l. c. 649.] Apposite to the view we take, that there is much of similarity if not an absolute reciprocalness, between an election to adopt and an election to discontinue township organization, Fox, J., said in the case last supra:

''While it may be true that some of the electors cast their ballots upon the theory that they were voting to continue or discontinue in force such organization, which they supposed had been previously adopted, yet it is equally true that at that election the contest was sharply presented on the proposition of township organization, and the electors gave expression to their will upon the proposition, and this court is unwilling to say that such expressions shall be ignored. The proposition having been submitted in substantial accordance with the provisions of the statute, and included in the official ballot published and the form of such ballot applicable to this subject being such as was prescribed by the statute, keeping in view that the manifest design and object of the law was to obtain the expression of the will of the electors upon township or-

ganization, and the qualified electors of Cass county, Missouri, having given such emphatic expression to their will upon this subject, we see no escape from the conclusion that the proposition of township organization was legally adopted at the election held in 1898."

Not to pursue the matter further, we are of the opinion that the result of the election held in Butler county in November, 1914, was to discontinue township organization therein and that respondents Barnhill, Harwell, Osborn, Reading, Kearby, Gardner, Ratcliff, Deaton, Burger and Phillips, were thereby divested of authority to act as *ex-officio* collector of the revenue of said Butler county, and as collectors of the several townships therein, respectively, and therefore the writ of ouster as to the above-named respondents and each of them, should be awarded.

V. This brings us to a consideration of the other question in this case; since it follows that township organization having been lawfully voted out, a vacancy thereby ensued in the office of collector of the revenue of Butler county. The point which is contested, as we stated in the beginning, is as to where the power of appointment is lodged. If it is in the county court, respondent Duncan was legally appointed and the writ should not issue as to him. If such power of appointment is lodged in the Governor, then Carl C. Abington is the person entitled to this office and the writ of ouster as to Duncan should issue.

Discontinuing Township Organization: Appointment of County Collector.

This point presents no difficulties whatever, the serious question in the case, i. e., the validity or not of the 1914 election having been disposed of, and turns upon a consideration of the self-same sections of the Constitution and the statute, which upon other phases we have discussed above herein. In the beginning we stated that so much of section 11745 as

265Mo.4

conferred upon the county court of a county which had voted out township organization, the power to appoint ordinary county officers (we pretermit sheriffs and coroners and such others as are specifically mentioned in the Constitution and special statutes, of course), was violative of section 9 of article 9 of the Constitution. Briefly, we reach this conclusion upon these grounds: The last clause of section 9, of the Constitution, supra, provides that when township organization is voted out, at once thereupon "all laws in force in relation to counties not having township organization shall take effect and be in force in such county." The view contended for by relator would have the effect of placing such counties as voted township organization out, back into the category of ordinary counties to be governed by the usual and ordinary laws; while the insistence of learned counsel for respondent Duncan would make of such a county a thing apart from all ordinary counties, with different laws to govern it. The makers of the Constitution saw no reason apparently, as we see none, why a county which had before had township organization, but which had elected to return to the common fold, should by that fact alone be set apart in a wholly different category. So they provided clearly that all the usual laws governing ordinary counties should reattach to and govern counties relinquishing township organization, immediately upon their voting it out. The "laws in force in relation to counties not having township organization," which laws as we see the Constitution, automatically applied to Butler county, provided at the time of the accrual of this vacancy and at the time the Governor filled it and now provide that as to an office like this "such vacancy shall be filled by appointment by the Governor." This being the law which at all of said times applied to "counties not having township organization," such law applied *ipso facto* and immediately to Butler county, the moment said county

voted out township organization. Section 11 of article 5 of the Constitution in nowise aids. respondent Duncan here. This for the reason that section 9 of article 9 plainly puts Butler county back into the ordinary category of counties the moment it abandoned township organization which had served to take it out of this common category. Section 11 of article 5 of the Constitution says that the Governor shall appoint persons to fill all vacancies in office, "unless otherwise provided by law." Here Butler county was required to step back into the ordinary line of counties and reassume all laws for its government which applied to the ordinary county, and as to such counties, i. e., the ordinary county, the appointment of all officers had already been "otherwise provided by law," pursuant to a general law which applied to all "counties not having township organization." [Sec. 5828, R. S. 1909.]

So we think there can be no two opinions, that the power of appointment here lay with the Governor and not with the county court; that so much of section 11745 as prescribes a contrary rule is unconstitutional and therefore as to the respondent Duncan also the writ of ouster should be awarded. Let our writ of ouster go as to all of the respondents. All concur, except *Brown, J., dubitante.*