PEOPLE v. STAMBOSVA.

1. CONSTITUTIONAL LAW—STATUTES—POLICE POWER—INTOXICATING LIQUORS—DUE PROCESS OF LAW.

The provision in Act No. 53, Pub. Acts 1919, amending Act No. 338, Pub. Acts 1917, prohibiting the possession of liquor by a private person for his own use, *held*, not in violation of the constitutional inhibition against depriving a person of his liberty and property without due process of law, but to be a proper exercise of the police power

of the State to make more effective the prohibition of
the liquor traffic under the constitutional mandate.

2. SAME—JUDICIAL NOTICE OF LITIGATION BEFORE THE COURT—
INTOXICATING LIQUORS.
     The Supreme Court will take judicial notice of the sequence
       of legislation and litigation which prevailed, and the cases
       which came before it in official efforts to enforce and put
       into effect the constitutional amendment prohibiting the
       liquor traffic.

3. SAME—STATUTES—IMMEDIATE EFFECT—PRESUMPTIONS.
     Following the holding by this court that the "Damon Act"
       was repealed by the "Wiley Act" (204 Mich. 559), the emer-
       gency of passing effective legislation for the enforcement
       of State-wide prohibition became a legislative question,
       and under the legitimate intendment, presumption, or in-
       ferences to be made and drawn from the situation dis-
       closed in favor of the propriety of such legislative action,
       this court cannot say that the giving immediate effect
       to Act No. 53, Pub. Acts 1919, amending the "Wiley Act"
       (Act No. 338, Pub. Acts 1917), constituted a clear violation
       of the limitation imposed by Article 5, § 21, of the State
       Constitution.

Exceptions before judgment from Muskegon; Van-
derwerp (John), J. Submitted April 16, 1920. (Docket
No. 112.) Decided June 7, 1920.

Spyros Stambosva was convicted of violating the
liquor law. Affirmed.

*Macdonald & Macdonald,* for appellant.

*Alex. J. Groesbeck,* Attorney General, *Christian A.
Broek,* Prosecuting Attorney, and *Harry W. Jackson,*
Assistant Prosecuting Attorney, for the people.

STEERE, J. The material facts in this case are few
and practically undisputed. Defendant ran a retail
fruit business in the city of Muskegon, also selling
canned goods and vegetables, advertising under the
name of the White Front Fruit & Vegetable Company.

On April 11, 1919, the assistant chief of police of
Muskegon made proper sworn complaint on informa-
tion and belief and obtained a warrant to search de-
fendant's place of business for intoxicating liquor.
The officers sent with the search warrant to defend-
ant's fruit store, which was located on the main busi-
ness street of Muskegon, found the place in charge of
a party who informed them defendant was tempo-
rarily absent but would soon return.  Advising the
party in charge of their mission they proceeded to
search the place for liquor, without results until they
discovered a locked trunk in a back room, the heft
of which and "chug" they heard from within led them
to think it contained liquor, and they waited for a
time until defendant would return to have him open
the locked trunk.  On his return they told him why
they were there.  He said he had some whisky in there
and they told him to "open it up," which he did.  The
trunk contained 8 quart bottles of whisky which the
officers seized.  Upon the trial defendant took the
stand and admitted the possession of the whisky, and
circumstances at his place of business as told by the
officers, said that he had "always been a drinking
man" and bought this whisky for his own use; that
he had never sold or offered any liquor for sale in
his place of business.  He was convicted of unlawfully
having in his possession as charged 8 quarts of whisky,
not held by him for mechanical, scientific, medical or
sacramental purposes, "contrary to the form of the
statute in such case made and provided."

Counsel for appellant concisely say in their brief
that upon the uncontroverted facts "the question is
merely the legality of the law under which the de-
fendant was arrested."  He was arrested and tried
under Act No. 338, Pub. Acts 1917, as amended by
Act No. 53, Pub. Acts 1919, passed April 1st and by
its concluding provision given immediate effect.

The principal contention made for the defense against the validity of the law, as applied to the case in hand under the undisputed facts, is that the legislative attempt to give Act No. 53 of 1919 immediate effect was void, being in contravention of section 21, article 5, of our Constitution which forbids such course except as to acts making appropriations or immediately necessary for preservation of public health, peace and safety. Somewhat auxiliary to that contention it is argued with citation of some supporting authority that legislation prohibiting a person from possession of intoxicating liquors for personal use is unconstitutional, as abridging the immunities and privileges of a citizen without justification, and urged that possession of liquor for one's own use cannot in any aspect of the question be so inherently dangerous to the public health, peace and safety as to warrant immediate legislation "making it a criminal act."

Whatever views may in times past have been entertained and in varying degree expressed by some courts and text writers as to the natural and inalienable right of a citizen to make, possess and use for his own comfort intoxicating liquor provided he did not otherwise use or sell any for unlawful purposes, under the present state of the law upon the subject the police power of the State acting through its legislature to control in that particular is well settled. In *Mugler* v. *Kansas*, 123 U. S. 623 (8 Sup. Ct. Rep. 273), a leading case in which the subject of prohibition is exhaustively reviewed by Justice Harlan it is said of the right to make for private use:

"And so, if, in the judgment of the legislature, the manufacture of intoxicating liquors for the maker's own use, as a beverage, would tend to cripple, if it did not defeat, the effort to guard the community against the evils attending the excessive use of such liquors, it is not for the courts, upon their views as to what is best and safest for the community, to dis-

regard the legislative determination of that question. So far from such a regulation having no relation to the general end sought to be accomplished, the entire scheme of prohibition, as embodied in the constitution and laws of Kansas, might fail, if the right of each citizen to manufacture intoxicating liquors for his own use as a beverage were recognized."

In the comparatively recent case of *Crane* v. *Campbell*, 245 U. S. 304 (38 Sup. Ct. Rep. 98), directly involving the right of the State to prohibit and punish the possession of intoxicating liquor for personal use, the *Mugler Case* and various other decisions are cited as to the power of the State to absolutely prohibit, and directly to the point of possession, it is said:

"As the State has the power above indicated to prohibit, it may adopt such measures as are reasonably appropriate or needful to render exercise of that power effective. *Booth* v. *Illinois*, 184 U. S. 425 (22 Sup. Ct. Rep. 425) ; *Silz* v. *Hesterberg*, 211 U. S. 31 (29 Sup. Ct. Rep. 10) ; *Murphy* v. *California*, 225 U. S. 623 (32 Sup. Ct. Rep. 697, 41 L. R. A. [N. S.] 153) ; and *Rast* v. *Van Deman & Lewis Co.*, 240 U. S. 342, 364 (36 Sup. Ct. Rep. 370, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455). And, considering the notorious difficulties always attendant upon efforts to suppress traffic in liquors, we are unable to say that the challenged inhibition of their possession was arbitrary and unreasonable or without proper relation to the legitimate legislative purpose. We further think it clearly follows from our numerous decisions upholding prohibition legislation that the right to hold intoxicating liquors for personal use is not one of those fundamental privileges of a citizen of the United States which no State may abridge."

Before the constitutional adoption of State-wide prohibition and the present supplemental legislation, a somewhat analogous question was before this court under the local option law. Act No. 381, Pub. Acts 1913 (2 Comp. Laws 1915, § 7118 *et seq.*), made it a criminal offense within prohibited territory to keep,

store or possess intoxicating liquor in any structure, building or room "other than the private residence of such person and which is not used as a place of public resort." In *People* v. *Wheeler,* 185 Mich. 164, defendant's conviction under that provision of the act was unsuccessfully attacked on various constitutional grounds. The provision was held not to be in violation of the constitutional inhibition against depriving a person of his liberty and property without due process of law, but a proper exercise of the police power of the State for effectively accomplishing the purpose of the legislation.

Upon the contention that the legislature violated section 21, article 5, of the Constitution, by giving Act No. 53, Pub. Acts 1919, immediate effect, counsel for both sides refrain from reference to *Attorney General* v. *Lindsay,* 178 Mich. 524, where the subject is discussed at some length. It is perhaps sufficient from that case to note the court there fully recognized the rule requiring every intendment to be taken in favor of the propriety and validity of legislative action, and that in case of doubt courts should not interfere to thwart the legislative will. Approaching the question of legislative determination of an emergency with that rule in mind, it seems pertinent to point out in the sequence of events that after adoption of the State-wide prohibition at the November election of 1916, the legislature of 1917 enacted two laws for carrying into effect and enforcing the constitutional amendment, the first being Act No. 161, called the "Damon act," followed by Act No. 338, called the "Wiley act," both by their terms becoming effective May 1, 1918, contemporaneous with the constitutional prohibition amendment, and Act No. 53 of 1919 quickly followed a decision of this court holding the Damon act had been repealed.

If not fully at liberty to take judicial notice of the

defiant lawlessness and disturbances in certain parts of the State resulting from active violation and official efforts to enforce and put the prohibition law into effect, which were matters of press comment and common knowledge, the court can at least take notice of the sequence of legislation and litigation which prevailed, and the cases which came before it upon that subject following the advent of prohibition. It was strenuously contended for the people before this court in *People* v. *Marxhausen,* 204 Mich. 559, that the Damon act (Act No. 161, Pub. Acts 1917), under which defendant was prosecuted, or a law of similar import touching possession of intoxicating liquors, was vital to an efficient enforcement of prohibition under the constitutional mandate, and for that reason the case was removed to this court by the people, under Act No. 159, Pub. Acts 1917, to review a judgment of the circuit court quashing the information and ordering return of liquor seized. The case was submitted in January, 1919, while the legislature of that year was in session, and an early decision requested in the public interest. It was decided February 18, 1919. The somewhat erroneous general impression as to what was decided in that case seems to yet linger, for we find it cited in defendant's brief as a supporting case, with argument apparently based on the supposition that the court passed adversely on the constitutionality of the then prohibition law. That case only decided that the Damon law under which defendant was prosecuted had been repealed by the Wiley act, and that in any aspect neither of the acts conferred the arbitrary right of search and seizure without legal process as assumed and exercised by the officers in the *Marxhausen Case;* the shown invasion of defendant's home in his absence, without a search warrant or authority from any court, was commented upon and pronounced an unauthorized trespass and invasion of his

constitutional rights. Following the handing down of that decision, Act No. 53, amending the Wiley act, to compass unlawful possession, with the constitutional rights of the citizen in his home safeguarded by proper provisions, was passed by the legislature then in session and given immediate effect. Concededly the emergency or immediate necessity was in the first instance a legislative question, and clearly, we think, under the legitimate intendment, presumption or inferences to be made and drawn from the situation disclosed in favor of the propriety of such legislative action the court cannot hold that the legislation in question constitutes a clear violation of the limitation invoked.

The conviction will stand affirmed, and as the record does not disclose at what stage of proceedings after conviction the case was removed to this court, it is remanded for such further proper proceedings as may be required in harmony with this opinion.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.