PEOPLE *v.* BURT.

1. INTOXICATING LIQUORS — VALIDITY OF AFFIDAVIT FOR SEARCH
   WARRANT SHOULD BE RAISED PRELIMINARY TO TRIAL.
   The proper practice, where the validity of an affidavit for
   a warrant to search a private residence for intoxicating
   liquors, issued under section 30, Act No. 336, Pub. Acts
   1921, is questioned, whether the alleged defect be one of
   law or of fact, is by motion to suppress the evidence ob-
   tained thereby preliminary to the trial, and it is not open
   to defendant upon the trial to collaterally inquire into
   the matter of how the liquor offered in evidence was
   obtained.[1]

2. SAME — MOTION TO SUPPRESS PROPERLY OVERRULED WHERE AF-
   FIDAVIT SUFFICIENT.
   Where the affidavit for a search warrant was sufficient as
   matter of law, in the absence of evidence contradicting
   it, the trial judge did not err in overruling defendant's
   motion to suppress the evidence obtained thereby.[2]

3. CONSTITUTIONAL LAW — INTOXICATING LIQUORS — STATUTES — PRO-
   HIBITION LAW.
   Section 2, Act No. 53, Pub. Acts 1919, amending Act No.
   338, Pub. Acts 1917, prohibiting the possession of intoxi-
   cating liquors for one's own use, is not unconstitutional.[3]
   BIRD, C. J., dissenting.

Exceptions before judgment from Jackson; Williams
(Benjamin), J. Submitted October 16, 1924. (Dock-
et No. 173.) Decided July 22, 1926.

Henry Burt was convicted of violating the liquor
law. Affirmed.

*John F. Henigan,* for appellant.

*Andrew B. Dougherty,* Attorney General, *John
Simpson,* Prosecuting Attorney, and *Harry E. Barn-
ard,* Assistant Prosecuting Attorney, for the people.

[1]Criminal Law, 16 C. J. §§ 1110, 2160; [2]Id., 16 C. J. § 1110;
[3]Intoxicating Liquors, 33 C. J. § 34; 24 A. L. R. 1408; 32 A. L. R.
408; 41 A. L. R. 1145.

BIRD, C. J. (*dissenting*).     The information filed in the Jackson circuit court against defendant charged that:

"On the 17th day of October, A. D. 1923, and on divers days and times between that date and the first day of August, A. D. 1923, at the city of Jackson, in the county of Jackson aforesaid, did then and there unlawfully have in his possession a certain quantity of vinous, malt, brewed, fermented, spirituous and intoxicating liquors, to-wit: 4¾ quarts of gin, so-called; 1 quart of Canadian whisky, so-called; several bottles of wine, so-called, and other liquors not identified, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan."

When arraigned defendant stood mute and a plea of not guilty was entered by order of the court.     Upon the trial he was convicted, and he assigns exceptions before sentence.     There are several assignments, two of which are important.     His first contention is:

(1)     That Act No. 53, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 7079 *et seq.*), is unconstitutional, because its title and section 2 of the act are broader than the constitutional inhibition; that the constitutional provision does not prohibit the possession of liquor for one's own use; that it is directed against the possession for the purpose of sale, barter, furnishing or giving away, or as the result of manufacture; that the Wiley law, Act No. 338, Pub. Acts 1917, followed the constitutional limitation and did not make the possession of liquor for one's use unlawful; that section 2 of Act No. 53, Pub. Acts 1919, made the possession of liquor for one's own use unlawful.     In passing this law counsel argues that the legislature went beyond the constitutional limitation.

(2)     Defendant's counsel, during the trial, raised the question in various ways that defendant could not be legally convicted of the offense charged in the information unless some proof was made on the trial

that defendant's dwelling house, which was used exclusively as such, was a place where intoxicating liquors were either manufactured or sold, or was a place of general public resort.

2. The proofs against defendant were given by three officers, who made the search, and one chemist. The officers testified that it was defendant's dwelling house which they searched, but no one of them testified that liquor had been manufactured or sold therein, or that the dwelling was a place of public resort. In fact, there was no proof in the case to that effect, unless it can be said that the affidavit for the search warrant made by one Nixon supplied it. The affidavit and warrant were in evidence.

Act No. 53, Pub. Acts 1919, § 30 (Comp. Laws Supp. 1922, § 7079 [30]), provides that:

&ast; &ast; &ast; "No warrant shall be issued to search a private dwelling occupied as such, unless some part of it is used as a store or shop, hotel or boarding house, or for any other purpose than a private residence, or unless such private dwelling is a place of public resort." &ast; &ast; &ast;

In view of this section, we think it was incumbent on the people to show on the trial, after it appeared that the place searched was the dwelling house of defendant, and exclusively used as such, that defendant's house was within at least one of the exceptions of the statute. The trial court appeared to be of the opinion that the search warrant and affidavit sufficed for this purpose.

Undoubtedly, the affidavit of Nixon was sufficient to move the discretion of the magistrate to issue the search warrant. And it is probable that the officers were well within the law in executing the warrant and obtaining the evidence of defendant's guilt. But before that evidence was admissible on the trial, some proof was necessary that defendant's dwelling house came within one of the exceptions mentioned in the

statute. Without such proof the presumption would be that it did not come within one of the exceptions. No such proof was offered by the people unless it can be said that the fact that liquor was sold therein was established by the affidavit of Nixon. If this contention should prevail, then we have this situation: Defendant is charged with having unlawful possession of intoxicating liquor. His home is searched and the evidence is found, and he is convicted by the *ex parte* affidavit of Nixon, who does not appear in court, and apparently cannot be found. Without this proof in some form the case could not legally go to the jury. Defendant was convicted without being confronted by Nixon, or any other witness on that question. Nixon is not produced by the people and no opportunity is given to defendant to cross-examine him. We think it was error to send the case to the jury on Nixon's *ex parte* affidavit, because in doing so defendant was deprived of his constitutional right to be "confronted by the witnesses against him" (article 2, § 19, Michigan Constitution).

It is suggested that defendant waived his right to raise this question because he did not move to suppress the evidence before trial. The answer to this is that the defendant did move before trial to quash the information, and among other reasons is the following:

"Because the testimony taken in the lower court shows that the liquor was found in the private dwelling house of the respondent, and there is no testimony that he or any one else had sold or manufactured or kept for sale any liquor there, or that it was a place of public resort."

This motion recites that it was based upon the files and records in said cause, on the return of the police judge and the testimony taken in the lower court. This motion was denied by the trial court.

But had defendant made no motion before trial, he

would have been, in my judgment, in equally as good position. This question does not belong to the class of questions which must be raised before trial. The questions belonging to that class are those calling in question the validity of the affidavit and search warrant and the proper execution of the warrant. These questions are not involved in this controversy. Defendant concedes that the affidavit was sufficient to move the discretion of the justice in issuing the warrant and no complaint is made of the execution thereof. The question involved in this point is that the statute forbids the search of defendant's dwelling except under certain conditions. When it appeared that the liquor offered was obtained from defendant's dwelling, it was then the duty of the State to show affirmatively, before the liquor was admissible, that defendant's dwelling was a place where liquor was either manufactured or sold or was a place of public resort. The State appeared to recognize its duty in this respect and attempted to, and did, show it by the affidavit of Nixon which was made to obtain the search warrant. Defendant insists that, if liquor were sold from his dwelling, it must be shown by Nixon in person and not by his affidavit. It was a fact which required substantive proof and could not be supplied by an *ex parte* affidavit. Defendant insists upon this because he has a constitutional right to be confronted by his accuser and is entitled to an opportunity to cross-examine him.

After the last argument has been made, the fact remains that defendant has been convicted of a felony when none has been shown. The only pretense of support is the affidavit of the itinerant who could not be found while the trial was in progress. Common fairness and common justice suggest that at some time, at some place, between the service of the warrant and the closing of the prison doors defendant should have

an opportunity to see and cross-examine his accusers. This opportunity has been denied to him.

The failure of the people to make some showing on the trial that defendant's dwelling was a place where intoxicating liquor was either manufactured or sold, or that the dwelling was a place of public resort, entitled defendant to a directed verdict in accordance with his request.

Attempt was made to cross-examine the chief of police as to the whereabouts of Nixon and what effort was made to subpœna him. This examination was proper and should have been permitted.

This view would ordinarily dispose of the case under our rule without considering the constitutional question, but in view of that question being decided by one of my associates it will be considered here.

1. The people proposed a prohibitory amendment to the Constitution by means of the initiative. The amendment was submitted to the electors at the November, 1916, election and received the requisite number of votes and thereby became a part of the Michigan Constitution. It follows:

"The manufacture, sale, keeping for sale, giving away, bartering or furnishing of any vinous, malt, brewed, fermented, spirituous or intoxicating liquors, except for medicinal, mechanical, chemical, scientific or sacramental purposes, shall be, after April thirtieth, nineteen hundred eighteen, prohibited in the State, forever. The legislature shall, by law, provide regulations for the sale of such liquors for medicinal, mechanical, chemical, scientific and sacramental purposes."

It will be noted that this amendment contained no inhibition forbidding one to have possession of intoxicating liquors for his *own* use. The inhibition is directed against the manufacture and the possession of intoxicating liquors for the purpose of sale, keeping for sale, giving away, bartering or furnishing. So

far as this constitutional amendment is concerned one could possess it for his *own* use.

Following the passage of this constitutional amendment the legislature, at its session in 1917, passed a prohibitory law in conformity with the constitutional amendment. The prohibitory section is, as follows:

"SECTION 2. It shall be unlawful for any person, directly or indirectly, himself or by his clerk, agent or employee, to manufacture, sell or keep for sale, give away, barter, furnish or otherwise dispose of any vinous, malt, brewed, fermented, spirituous or intoxicating liquors; or any mixed liquor or beverages any part of which is intoxicating; or to keep a saloon or any other place where such liquors are manufactured, sold, stored for sale, given away or furnished in this State, on or after the first day of May, nineteen hundred eighteen, except as herein otherwise provided."

It will be seen that this legislation did not prohibit one having possession of intoxicating liquor for his *own* use. It is, therefore, clear, under the constitutional amendment and the Wiley law of 1917, that one could not legally manufacture intoxicating liquors nor possess it for the purpose of sale, keeping for sale, giving away, bartering or furnishing, but was at liberty to possess it for his *own* use.

The legislature of 1919 changed and extended this inhibition materially. It passed Act No. 53 (Comp. Laws Supp. 1922, § 7079 [2]) amending the Wiley act. Section 2 is amended to read, as follows:

"It shall be unlawful for any person, directly or indirectly, himself or by his clerk, agent or employee, to manufacture, sell or keep for sale, give away, barter, furnish or otherwise dispose of, or to import, transport, *or have in possession,* any vinous, malt, brewed, fermented, spirituous or intoxicating liquors," etc.

It will be observed that this act made the possession of intoxicating liquor for one's *own* use a felony, whereas the constitutional amendment and the Wiley

law did not.   The question, therefore, is whether the legislature had the power to add another prohibition to those enumerated by the constitutional amendment.

This constitutional amendment is in part self-executing and in part not self-executing.   12 C. J. p. 731; *State* v. *Duncan,* 265 Mo. 26 (175 S. W. 940). The former part of the amendment is self-executing. The latter part with reference to the sale of intoxicating liquor for medicinal, mechanical, chemical, scientific and sacramental purposes is not self-executing.   The first part of the amendment is prohibitory, and the legislature could not restrict or extend it.   The latter part was discretionary with the legislature to say under what conditions liquor could be sold for such purposes.

It is a settled rule of constitutional construction that prohibitive and restricted provisions are self-executing and may be enforced by the courts independently of any legislative action.   *Halsey & Co.* v. *City of Belle Plaine,* 128 Iowa, 467 (104 N. W. 494); *Commonwealth* v. *Jones,* 73 Ky. 725; *Hills* v. *City of Chicago,* 60 Ill. 86; *Wren* v. *Dixon,* 40 Nev. 170 (161 Pac. 722, 167 Pac. 324, Ann. Cas. 1918D, 1064); *Campbell* v. *Bryant,* 104 Va. 509 (52 S. E. 638); *Arnett* v. *Board of Com'rs of Decatur Co.,* 75 Ga. 782.

It was the duty of the legislature to pass appropriate legislation to carry the whole amendment into effect, whether ordered to do so or not by the constitutional provisions.   *Gherna* v. *State,* 16 Ariz. 344 (146 Pac. 494, Ann. Cas. 1916D, 94).

It had no power to change or extend the amendment. It did have power to enforce it by appropriate legislation.   It had no discretion as to the prohibition of intoxicating liquors as enumerated.   It had no power to make that a crime which was not a crime, but did have the discretion to say under what conditions the sale of intoxicating liquors for medicinal, mechanical,

chemical, scientific and sacramental purposes could be made.

A familiar canon often used in the construction of a constitution is that "the expression of one thing in a constitution may necessarily involve the exclusion of other things not expressed." 6 R. C. L. p. 49; *Page* v. *Allen,* 58 Pa. St. 338 (98 Am. Dec. 272). Applying that legal maxim to the present case we have a constitutional amendment prohibiting the manufacture of intoxicating liquor, an inhibition against one possessing intoxicating liquor for the purpose of sale, keeping for sale, giving away, bartering or furnishing, but no reference is made to possessing intoxicating liquor for one's *own* use. Therefore, under this rule of construction, it must be excluded from the inhibition.

This is in accord with our holdings in this State. We held in *Hamilton* v. *Secretary of State,* 227 Mich. 111, that the legislature might supply the means for enforcing a self-executing constitutional provision, but if, in so doing, it amended or annexed additional burdens to the operation of the law it was unconstitutional, and it was further held in that case that the legislative act did impose additional burdens on the operation and consequently the act to that extent was void. It was said in that case:

"The constitutional provision contains procedural rules, regulations and limitations; it maps the course and marks the way for the accomplishment of an end; it summons no legislative aid and will brook no elimination or restriction of its requirements; it grants rights on conditions expressed, and if its provisions are complied with and its procedure followed, its mandate must be obeyed. Its provisions are prospective in operation and self-executing."

In *Scott* v. *Secretary of State,* 202 Mich. 643, we said:

"Of the right of qualified voters of the State to propose amendments to the Constitution by petition, it

may be said, generally, that it can be interfered with neither by the legislature, the courts, nor the officers charged with any duty in the premises.    But the right is to be exercised in a certain way and according to certain conditions, the limitations upon its exercise, like the reservation of the right itself, being found in the Constitution."

We conclude, therefore, from these holdings that the legislature had no right to restrict or extend the constitutional amendment.    It could not add other inhibitions that turned innocent acts into felonies.    It could only provide the means and procedure for enforcing the amendment.    The amendment was clearly a limitation on the power of the legislature in regard to the extent to which intoxicating liquors should be prohibited.    After the people, by their amendment, had covered the field, nothing was left for the legislature but to provide for its enforcement.

Act No. 53, Pub. Acts 1919, provided for something more than the means of enforcement.    It extended and made that a felony which was never before a felony; it took away from the citizen a right, namely, the right of having possession of intoxicating liquor, which he had enjoyed since the foundation of the government.    Can the deprivation of this right be called procedure, an act to enforce the constitutional amendment?    If it can, then the procedure is stronger than the thing to be enforced.    How and in what manner can it be said that making the possession of liquor a felony is an act to enforce the constitutional amendment?    The addition of this legislative act of 1919 has added a burden to the enforcement of the constitutional amendment.    It is common knowledge that it has added thousands of liquor violations daily, and it has made the constitutional amendment very difficult of enforcement.

If the Constitution should fix 40 acres of land as an exemption, would the legislature have the right to

extend it to 60 acres? If the Constitution should prescribe the time as 5 years which one would have to be a resident of the State before he could vote, could the legislature extend the time to 8 years? If the Constitution should prescribe the age as 25 at which a resident might be qualified to a seat in the legislature, could the legislature extend that time to 30 years? *Michigan United Light Co.* v. *Village of Hart,* 235 Mich. 682. If the Constitution should authorize a municipality to mortgage its public utility, could the legislature restrict that right to any particular amount? It is quite obvious that the legislature could do none of these things. If not, how can it add another inhibition to the constitutional amendment which will deprive the citizen of the right he has always enjoyed? The amendment is clearly a limitation upon the power of the legislature. The act of 1919 is not enforcement, it is prohibition.

It is said that this question was determined in *People* v. *Stambosva,* 210 Mich. 436. This question was not raised in that case. It is conceded in this case that were there no constitutional amendment covering the field that it would be within the power of the legislature to pass such an act.

I realize that this holding affects the prohibition law. That question at the present time is pressing from all sides, but the question involved here is a constitutional one and it is the duty of the court to protect the Constitution against statutory amendments of this character. The prohibition question will be over after a while, and if we sustain this infringement of the Constitution it will quite likely return to plague us or those who come after us.

My opinion is that the words "or have in possession" should be eliminated from Act No. 53, Pub. Acts 1919. This will make the legislation square with the constitutional amendment.

The exceptions should be sustained and defendant discharged.

FELLOWS, J. Defendant was convicted of a violation of the prohibition law and reviews his conviction on exceptions before sentence. The intoxicating liquor introduced in evidence was secured in a search of defendant's home on a search warrant. Two questions are presented for review. Defendant's counsel insisted, and here insists, that it was incumbent on the people to prove on the trial in order to make out a case that defendant's home was either a place of public resort, or that it was used for the unlawful manufacture or sale of intoxicating liquors and that unless one of these conditions was established by proofs on the trial the liquor could not be received in evidence, and defendant could not be convicted. The other objection is that the prohibition act is unconstitutional.

Section 30, Act No. 336, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 7079 [30]), in part provides as follows:

"No warrant shall be issued to search a private dwelling occupied as such unless some part of it is used as a store or shop, hotel or boarding house, or for any other purpose than a private residence, or unless such private dwelling is a place of public resort, or unless it is being used for the unlawful manufacture or sale of intoxicating liquor."

This court held in *People* v. *Marxhausen,* 204 Mich. 559 (3 A. L. R. 1505), that it was not open to defendant upon the trial to collaterally inquire into the matter of how the liquor offered in evidence was obtained. This holding has been followed in cases too numerous to cite. It was there pointed out that proper practice required a motion to return the liquor unlawfully seized before the trial. At some stage in the proceedings one whose home has been invaded in violation of

section 30, Act No. 336, Pub. Acts 1921, should have an opportunity to be heard, otherwise the statute is without purpose or avail. The affidavit gives the court jurisdiction to issue the writ (*People* v. *Czckay*, 218 Mich. 660), and the officer would doubtless be protected by his warrant if it is fair on its face. If the affidavit for the search warrant is defective as a matter of law defendant should raise the question preliminary to the trial by motion to suppress. If the affidavit for the search warrant is defective as matter of fact (*i. e.* is false), defendant should likewise raise the question preliminary to the trial by motion to suppress. A motion, in effect one to suppress, was made in the instant case; it seems to have been based on the evidence taken before the examining magistrate. But that evidence is not a part of the record and is not before us. The affidavit upon which the search warrant was issued is made a part of the record; it is sufficient as matter of law. In the absence of evidence contradicting it, the trial judge did not err in overruling the motion to suppress. Upon this main question involved in this case, see *Commonwealth* v. *Intoxicating Liquors*, 142 Mass. 470 (8 N. E. 421) ; *Steele* v. *United States*, 267 U. S. 498, 505 (45 Sup. Ct. 414, 417).

The constitutional question raised by defendant's counsel is ruled by *People* v. *Stambosva*, 210 Mich. 436, contrary to counsel's contention.

SHARPE, STEERE, WIEST, CLARK, and McDONALD, JJ., concurred with FELLOWS, J.

Justice MOORE took no part in this decision.