TODD *v.* HULL.

STATUTES—IMMEDIATE EFFECT PROVISION—CONSTITUTIONAL LAW— EQUALLY DIVIDED COURT.

Decree providing that immediate effect provision of statute creating public service commission and abolishing public utilities commission was constitutional is affirmed by an equally divided court (Act No. 3, Pub. Acts 1939).

Appeal from Ingham; Carr (Leland W.), J. Submitted March 2, 1939. (Docket No. 117, Calendar No. 40,467.) Decided April 12, 1939.

Bill by Paul H. Todd and Joseph M. Donnelly, individually and as members of the Michigan Public

Utilities Commission, against Ivan Hull and others to have declared null and void the immediate effect provision of a statute, for an injunction and for other relief. Bill dismissed. Plaintiffs appeal. Affirmed by an equally divided court.

*Joseph Zwerdling,* for plaintiffs.

*Thomas Read,* Attorney General, and *Edmund E. Shepherd* and *Kenneth G. Prettie,* Assistants Attorney General, for defendants.

POTTER, J. Paul H. Todd and Joseph M. Donnelly, individually and as two out of five members of the Michigan public utilities commission, filed a bill of complaint against defendants asking the court to declare the immediate effect provision of Act No. 3, Pub. Acts 1939 (Stat. Ann. 1939 Cum. Supp. § 22.13[1] *et seq.*) unconstitutional and void; to restrain defendants from entering upon or performing the duties imposed upon them as appointees under Act No. 3, Pub. Acts 1939; for a temporary injunction restraining defendants, pending suit, from entering upon the duties of the office of public service commissioners and, in any event, restraining defendants from entering upon their duties as appointees under Act No. 3, Pub. Acts 1939, until defendants' right to so act is established in proper legal proceedings; and for other relief.

Defendants answered, setting up that Act No. 3, Pub. Acts 1939, abolished the Michigan public utilities commission and created the Michigan public service commission; that they were duly and legally appointed members of the public service commission under and in pursuance of its terms; that they had attempted to legally perform the duties of their

office and that plaintiffs were unlawfully holding the office of public service commissioners without right. Defendants also made a motion to dismiss plaintiffs' bill of complaint for the reason that all the allegations contained in the amended bill which impugned the motives of good faith of the legislature were impertinent and irrelevant and should be stricken from the amended bill; that the court might not inquire into such motives or good faith; that there was no equity on the face of the amended bill; that no questions of fact were involved; that it appeared from the face of the bill and from the face of the act in question that the statute made appropriations and, therefore, under the Constitution (1908), art. 5, § 21, the legislature was authorized to give immediate effect to such act; that it appeared the act in question was for the preservation of the public peace, health and safety; that it did not clearly and manifestly appear, beyond all doubt, from such facts as were properly pleaded in the amended bill or in the title and provisions of the act that its enactment was not immediately necessary for the preservation of the public health, peace and safety, nor did it clearly and manifestly appear therefrom that the legislature abused its prerogative in giving the statute immediate effect; that the amended bill of complaint was an attempt by injunction to try title to public office, which may be tried only in *quo warranto* proceedings instituted in the Supreme Court of the State, on the information of the attorney general, pursuant to 3 Comp. Laws 1929, § 15296 (Stat. Ann. § 27.2340).

The case was brought on for hearing in the trial court, duly argued, and the trial court filed an opinion and entered a decree in pursuance thereof dismissing plaintiffs' bill of complaint.

From this decree, plaintiffs appeal, contending Act No. 3, Pub. Acts 1939, is not an act making an appropriation within the meaning or contemplation of the Constitution (1908), art. 5, § 21; that Act No. 3, Pub. Acts 1939, is not immediately necessary for the preservation of the public peace, health or safety within the contemplation of the Constitution; and that the legislature exceeded its constitutional authority in giving immediate effect to such act.

1. The title to a public office cannot be tried or determined in a court of chancery. *City of Detroit v. Board of Public Works*, 23 Mich. 546; *Stenglein v. Saginaw Circuit Judge*, 128 Mich. 440. In the latter case, the court said the actual incumbents of an office could be protected, pending a contest as to the title thereto, from interference with their possession and the exercise of their functions; that the granting of an injunction in such cases did not determine the question of title but went merely to the protection of the present incumbents against the interference of claimants out of possession whose title was not yet established. *Brady* v. *Sweetland*, 13 Kan. 41; 2 High, Injunctions (3d Ed.), p. 1030, § 1315. The right of plaintiffs to an injunction until a determination of the question of title to the office, under the facts in that case, was established. The determination of the question of jurisdiction disposes of this case.

2. The power of the legislature to enact the legislation in question is not controverted. It is claimed the legislature exceeded its authority in giving the act immediate effect and the immediate effect clause of the statute is unconstitutional and void.

In passing on the constitutionality of statutes, nothing but a clear violation of the Constitution will authorize the courts to overrule the legislative will.

Where there is a reasonable doubt as to the constitutionality of an act, it must be resolved in favor of the act. *Albert* v. *Gibson,* 141 Mich. ˙698. When a litigant comes into court to ask the court to declare a particular statute null and void, as being beyond the power of the legislature to pass, he must show precisely and conclusively that it is beyond such power. *People, ex rel. Darling,* v. *Warden of City Prison,* 154 App. Div. 413 (139 N. Y. Supp. 277). A statute will be presumed to be constitutional by the courts unless the contrary clearly appears. *Scott* v. *Smart's Executors,* 1 Mich. 295; *Thompson* v. *Auditor General,* 261 Mich. 624. In case of doubt, every possible presumption not clearly inconsistent with the language and subject matter of the act is to be made in favor of its constitutionality. *Sears* v. *Cottrell,* 5 Mich. 251. All reasonable presumptions or intendments must be indulged in favor of the validity of the act, and it is only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity. *Attorney General, ex rel. Barbour,* v. *Lindsay,* 178 Mich. 524. The statute is presumed to be constitutional and will not be declared unconstitutional unless clearly so beyond a reasonable doubt. *Bowerman* v. *Sheehan,* 242 Mich. 95 (61 A. L. R. 859).

The Constitution provides:

"No act passed by the legislature shall go into effect until ninety days after the final adjournment of the session of the legislature which passed such act, except such acts making appropriations and such acts immediately necessary for the preservation of the public peace, health or safety, as have been given immediate effect by action of the legislature." Const. (1908), art. 5, § 1.

"No act shall take effect or be in force until the expiration of ninety days from the end of the session at which the same is passed, except that the legislature may give immediate effect to acts making appropriations and acts immediately necessary for the preservation of the public peace, health or safety by a two-thirds vote of the members elected to each house." Const. (1908), art. 5, § 21.

There are many rules in relation to the construction of statutes similar to that involved.

In a majority of jurisdictions, the question whether a statute may be given immediate effect, under analogous constitutional provisions, rests upon the theory that the existence of such necessity is a question of fact and the authority to determine such fact must rest somewhere; that the Constitution does not confer it upon any tribunal and it must, therefore, necessarily reside with that department of the government which is called upon to exercise the power. It is a question of which the legislature alone must be the judge, and when it decides the fact to exist, its action is final. *Hutchens* v. *Jackson*, 37 N. M. 325 (23 Pac. [2d] 355). This was substantially the basis of the reasoning of Justices OSTRANDER and BIRD in *Attorney General, ex rel. Barbour,* v. *Lindsay, supra,* 546, where Justice OSTRANDER said:

"Whether an act of the legislature is one immediately necessary for the preservation of the public peace, health, or safety is a question to be finally determined by the legislature. Three-fifths* of the

---

* Act No. 5, Pub. Acts 1913, the act under consideration in *Attorney General, ex rel. Barbour,* v. *Lindsay,* was passed and given immediate effect by more than two thirds of the members-elect of each house of the legislature, the number necessary to give immediate effect. Three fifths of the members of each house would be an insufficient number. Const. 1908, art. 5, § 21.—REPORTER.

members of each house having given the opinion
that the act in question is one immediately necessary
for the preservation of the public peace, health, or
safety, no court may review or set aside such deter-
mination.''

Another view, namely, that the question should
be determined by the act itself, independent of any
presumptions of its constitutionality, is well repre-
sented by the opinion in *State, ex rel. Goodman,* v.
*Stewart,* 57 Mont. 144 (187 Pac. 641).

No particular value results from a consideration
of cases from other courts because no line of au-
thorities represents precisely the holding of this
court.   The general subject is discussed in 59 C. J.
p. 1143; 25 R. C. L. p. 801, § 50; 50 L. R. A. (N. S.),
195, 212; L. R. A. 1917 B, 15, 26; 7 A. L. R. 519.

The rule adopted by this court is not the rule
stated by Justice OSTRANDER in *Attorney General,
ex rel. Barbour,* v. *Lindsay, supra,* nor it is the rule
announced by Chief Justice McALVAY in that case
who held:

''In Michigan only two classes of legislation may
be given immediate effect by a two-thirds vote of all
members elected, and *no authority is given to de-
clare an emergency.''*

The court, in *Attorney General, ex rel. Barbour,*
v. *Lindsay, supra,* held the legislature could not
with impunity disregard the constitutional limita-
tions and give immediate effect to acts clearly not
immediately necessary for the preservation of the
public peace, health or safety.

The State has inherent power, within reasonable
and proper limits, to regulate and control public
utilities operating within its borders.   The power

resides with the legislature, and may be exerted either directly by the legislative authority or by administrative bodies endowed with power to that end. The State may enforce its regulations by appropriate penalties. The right of the State to regulate public utilities is founded upon the police power. 51 C. J. p. 9, and cases cited. The police power is the power inherent in a government to enact laws, within constitutional limits, to promote the order, safety, health, morals, and general welfare of society. As applied to the powers of the States of the American union, the term is also used to denote those inherent governmental powers which, under the Federal system established by the Constitution of the United States, are reserved to the several States. 12 C. J. p. 904.

The police power is thus defined by the Supreme Court of the United States:

"This power is, and must be from its very nature, incapable of any very exact definition or limitation. Upon it depends the security of social order, the life and health of the citizen, the comfort of an existence in a thickly populated community, the enjoyment of private and social life, and the beneficial use of property. 'It extends,' says another eminent judge, 'to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the State; * * * and persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the State. Of the perfect right of the legislature to do this no question ever was, or, upon acknowledged general principles, ever can be made, so far as natural persons are concerned.' " *Slaughter-House Cases,* 16 Wall. (83 U. S.) 36.

In the *License Cases,* 5 How. (46 U. S.) 504, 583, the supreme court of the United States, by Mr. Chief Justice Taney, said:

"What are the police powers of a State? *They are nothing more or less than the powers of government inherent in every sovereignty to the extent of its dominions.* And whether a State passes a quarantine law, or a law to punish offences, or to establish courts of justice, or requiring certain instruments to be recorded, or to regulate commerce within its own limits, in every case it exercises the same powers; that is to say, the power of sovereignty, the power to govern men and things within the limits of its dominion."

Under our system, the power is lodged with the legislative branch of the government. It belongs to that department to exert what are known as the police powers of the State and to determine primarily what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety. If, therefore, a statute purporting to have been enacted to promote the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts so to adjudge, and thereby give effect to the Constitution. *Mugler* v. *Kansas,* 123 U. S. 623 (8 Sup. Ct. 273).

The act in question makes many changes in the existing law. It provides:

"No member (of the public service commission created by the law) shall serve as an officer or committee member of any political party organization" while in office. This provision of the law was to prevent the utilization of the office of public service

commissioner for the purpose of sandbagging public utilities for campaign purposes.

That no member of the public service commission shall "hold any office or be employed by any other commission, board, department or institution" of the State. Members of the Michigan public utilities commission had, while holding office, been appointed to other offices which they held during a part of their term.

"No commission member shall be retained or employed by any public utility or public service subject to the jurisdiction and control of the commission during the time he is acting as such commissioner, and for six months thereafter." This was to prevent public service commissioners using their office for private advantage either presently or within six months after their term of office expired.

"No member of the commission, who is a member of the bar of the State of Michigan, shall practice his profession or act as counsellor or attorney in any court of this State during the time he is a member of said commission." This seems to apply even in cases where public utility matters are not involved, and was designed to compel the members of the commission to give their entire time to the job.

If a member of the public service commission is a member of a partnership, such partnership is prohibited from engaging in public utility practice.

The commission is staggered so that one goes out of office each year, so that the commission will always have at least four men with experience on the commission.

To obviate squabbles on the commission over who shall be chairman thereof, the statute provides the governor shall designate the chairman.

The salary of the commissioners is reduced from $7,000 to $6,000 a year.

"Any order or decree of the Michigan public service commission shall be subject to review in the manner now provided by law for reviewing orders and decrees of the Michigan railroad commission or the Michigan public utilities commission." This was evidently for the purpose of making orders of the Michigan public service commission relating to motor vehicles on the public highways reviewable in chancery, and to obviate the rule of *Lafayette Transfer & Storage Co.* v. *Michigan Public Utilities Com'n,* 287 Mich. 488.

Each public service commissioner is to devote his time to the duties of the office.

All moneys collected by the public service commission are to be paid monthly to the State treasurer and receipt taken therefor.

The act appropriates $10,000 from the general fund for the purpose of setting up the commission and other purposes designated by statute.

The act provides it shall stand notwithstanding the invalidity of any particular section; and it is ordered to take immediate effect.

There is no question but that the act makes an appropriation. An act making an appropriation as used in the Constitution is a legislative act which sets apart or assigns to a particular purpose or use a sum of money out of what may be in the treasury of the State for specific purposes and objects,—an act authorizing the expenditure of public funds for a public purpose. 4 C. J. pp. 1458–1460; 6 C. J. S. pp. 123–125.

Acts making appropriations may be given immediate effect in accordance with the provisions of the Constitution above-quoted. It is contended by plaintiffs that the making of the appropriation by the act in question was a mere subterfuge. But this

involves the motives of the legislature which we may not inquire into or impugn.

Suppose, in the opinion of the legislature, the Michigan public utilities commission did not function as the legislature thought it should; that it neglected to make proper rules and regulations for the installation of appliances to use gas and proper inspection of installed facilities for the transmission of gas, the installation of gas fixtures, adequate facilities for maintaining proper pressure, compliance with rules of service, or permitted gas companies to establish and maintain a schedule of discriminatory rates or establish rules, regulations and conditions of service which were unwarranted or discriminatory; or that, in the opinion of the legislature, it permitted motor vehicles devoted to the transportation of persons and property to run at excessive rates of speed or operate in an overloaded condition, without adequate facilities for the safety of property or persons transported, that motor busses were permitted to operate in an unsanitary condition, without adequate stops for personal comfort and safety, thus endangering the health of passengers; that proper rules governing the transmission of electricity and the installation of electrical equipment were not imposed or enforced, whereby lives were endangered, as in *Lenawee County Gas & Electric Co.* v. *City of Adrian,* 209 Mich. 52 (10 A. L. R. 1328); *Pettersch* v. *Grand Rapids Gas Light Co.,* 245 Mich. 277 (28 N. C. C. A. 44); *Nephew* v. *Consumers Power Co.,* 283 Mich. 12; *Russell* v. *Consumers Power Co.,* 287 Mich. 154; or that from the use of electrical energy, through the negligent failure of the commission to act, public safety was endangered, as in *Kruis* v. *Railway Co.,* 190 Mich. 105; *Mueller* v. *Citizens Telephone Co.,* 230 Mich. 173;

*Johnson* v. *City of Bay City,* 164 Mich. 251 (Ann. Cas. 1912 B, 866) ; *Sumner* v. *Eastern Michigan Edison Co.,* 187 Mich. 169 (12 N. C. C. A. 84) ; *Brabon* v. *Gladwin Light & Power Co.,* 201 Mich. 697 ; *Eaton* v. *Consumers Power Co.,* 256 Mich. 549 ; *Lamb* v. *Consumers Power Co.,* 286 Mich. 228 ; or that, through improper regulation of telephone companies, injuries resulted, as in *Hovey* v. *Michigan Telephone Co.,* 124 Mich. 607, or that discriminatory rates for telephone service were made without reason between communities or localities. If the legislature was satisfied of these, or any of these, things which relate to the public peace, health and safety, it would have a clear right, under the Constitution, to abolish the public utilities commission and to create a new commission if it should so desire, and to give the law providing for the same immediate effect.

The writer has heretofore expressed his views upon the question of inquiring into the motives which may have actuated the legislature in enacting statutes. *Young* v. *City of Ann Arbor,* 267 Mich. 241 ; *C. F. Smith Co.* v. *Fitzgerald,* 270 Mich. 659. There was nothing new or original in what was said in the cases cited. There is a manifest absurdity in allowing any tribunal, either court or jury, to determine from testimony the constitutionality of a law. *People* v. *Smith,* 108 Mich. 527 (32 L. R. A. 853, 62 Am. St. Rep. 715). Courts have nothing to do with the motives of legislators nor the reasons they may have for passing a law. The polar star of interpretation to guide them is the language of the Constitution itself and the sole question always is, Does the law destroy or abridge the right? *Todd* v. *Boards of Election Commissioners,* 104 Mich. 474 (29 L. R. A. 330).

In *People, ex rel. Ellis,* v. *Calder,* 153 Mich. 724 (126 Am. St. Rep. 550), the good faith of the legislature in repealing a statute was before the court. It was said:

"In this connection we notice the contention of respondents that in repealing that law the legislature must act in good faith. It is sufficient to say that the courts must conclusively presume that the legislature did act in good faith. Under the rule above-stated the courts have no authority to investigate that question."

In *People* v. *Gibbs,* 186 Mich. 127 (Ann. Cas. 1917 B, 830), it was said:

"Courts are not concerned with the motives which actuate members of a legislative body in enacting a law, but in the results of their action. Bad motives might inspire a law which appeared on its face and proved valid and beneficial, while a bad and invalid law might be, and sometimes is, passed with good intent and the best of motives."

In *Sonzinsky* v. *United States,* 300 U. S. 506 (57 Sup. Ct. 554), it was said:

"Inquiry into the hidden motives which may move Congress to exercise a power constitutionally conferred upon it is beyond the competency of courts. *Veazie Bank* v. *Fenno,* 8 Wall. (75 U. S.) 533; *Mc-Cray* v. *United States,* 195 U. S. 27, 56–59 (24 Sup. Ct. 769, 1 Ann. Cas. 561); *United States* v. *Doremus,* 249 U. S. 86, 93, 94 (39 Sup. Ct. 214); See *Magnano Co.* v. *Hamilton,* 292 U. S. 40, 44, 45 (54 Sup. Ct. 599); cf. *Arizona* v. *California,* 283 U. S. 423, 455 (51 Sup. Ct. 522); *Smith* v. *Kansas City Title Co.,* 255 U. S. 180, 210 (41 Sup. Ct. 243); *Weber* v. *Freed,* 239 U. S. 325, 329, 330 (36 Sup. Ct. 131, Ann. Cas. 1916 C, 317); *Fletcher* v. *Peck,* 6 Cranch (U. S.), 87, 130."

The authority of the legislature to pass the act in question is not attacked. The basis of plaintiffs'

contention is that the legislature exceeded its constitutional authority in giving the statute immediate effect.

"Whether a statute is constitutional or not is always a question of power; that is, a question whether the legislature in the particular case, in respect to the subject-matter of the act, the manner in which its object is to be accomplished, and the mode of enacting it, has kept within the constitutional limits and observed the constitutional conditions. In any case in which this question is answered in the affirmative, the courts are not at liberty to inquire into the proper exercise of the power. They must assume that legislative discretion has been properly exercised. If evidence was required, it must be supposed that it was before the legislature when the act was passed; and if any special finding was required to warrant the passage of the particular act, it would seem that the passage of the act itself might be held equivalent to such finding. And although it has sometimes been urged at the bar that the courts ought to inquire into the motives of the legislature where fraud and corruption were alleged, and annul their action if the allegation were established, the argument has in no case been acceded to by the judiciary, and they have never allowed the inquiry to be entered upon. The reasons are the same here as those which preclude an inquiry into the motives of the governor in the exercise of a discretion vested in him exclusively. He is responsible for his acts in such a case, not to the courts, but to the people." Cooley, Constitutional Limitations (6th Ed.), pp. 220–222.

The claim that plaintiffs are entitled to a referendum is effectually disposed of by the language of the Constitution itself because if the legislature had a right to give the act in question immediate effect, then it negatived the idea of a referendum. There

is good reason and sound policy for not permitting a referendum upon acts making appropriations, or acts under the police power, for the reason the public peace, health and safety is directly involved. Appropriations are in the judgment of the legislature necessary for the appropriate functioning of government, which functions may be carried out and performed only by individuals. Government exists largely for the maintenance of the public peace, health and safety of the inhabitants, and no one will contend either that the government should cease to perform its proper functions or that the public peace, health or safety should be endangered while the people make up their minds whether a particular act of the legislature should be given immediate effect or not.

The majority opinion in *Attorney General, ex rel. Barbour,* v. *Lindsay, supra,* 540, said:

"I am of opinion that every intendment should be taken in favor of the propriety of legislative action. In cases of doubt, the courts should never interfere to thwart the legislative will, but, where the action constitutes a clear violation of the limitation imposed, it should unhesitatingly be held to be invalid."

Of the particular act there questioned, it was said:

"I do not think it can be said with certainty that the act in question was not immediately necessary for the preservation of the public peace, health, and safety, and the courts should interfere only where that conclusion is inevitable."

In *Simpson* v. *Paddock,* 195 Mich. 581, the statute there under consideration was held invalid because it was special legislation, rather than a general law enacted in the public interest under a legitimate ex-

ercise of the police power for the general welfare of the people throughout the State, and a palpable attempt to regulate the internal affairs of cities amounting to unwarranted interference with their rights of local self-government as emphasized in the Constitution.

In *People* v. *Urcavitch,* 210 Mich. 431, it was held that before declaring a law inoperative for the reason it was given immediate effect:

"It should clearly appear that the legislature has abused its prerogative in this respect. * * * The necessities of the situation which prompted the passage of the amendment were doubtless then before the legislature, and we do not feel that the showing on this record would warrant us in holding that the situation of affairs at that time did not justify giving it immediate effect."

In *People* v. *Stambosva,* 210 Mich. 436, a similar question was before the court, and it was said:

"Concededly the emergency or immediate necessity was in the first instance a legislative question, and clearly, we think, under the legitimate intendment, presumption or inferences to be made and drawn from the situation disclosed in favor of the propriety of such legislative action the court cannot hold that the legislation in question constitutes a clear violation of the limitation invoked."

In *People* v. *Bodjack,* 210 Mich. 443, the question of giving immediate effect to the act in question was again before the court, and it was said:

"We shall spend no time upon the subject, but shall hold that, for the reasons stated in those opinions, there is no merit in the question, and we hold adversely to the contention of the defendant in that regard for the reasons already referred to."

The last three cases involved the validity of a liquor law given immediate effect by the legislature. Though, in the opinion of the legislature and this court, the statutes there involved were very clearly immediately necessary for the preservation of the public health, peace, and safety, they were superseded by prohibition, which was followed by repeal.

In *Newberry* v. *Starr,* 247 Mich. 404, an act providing for the consolidation of certain school districts was attacked upon the ground it was beyond the power of the legislature to give it immediate effect. The majority opinion quoted approvingly from *Attorney General, ex rel. Barbour,* v. *Lindsay, supra,* and mentioned *People* v. *Urcavitch, supra,* and *People* v. *Stambosva, supra.* It was said that school districts have most important duties relating to the preservation of health and less important duties respecting peace and safety, and that:

"The act relates to important State agencies having to do with preservation of public health, peace, and safety.

"Doubts must be resolved in favor of the legislation, and every intendment must be taken in its favor."

In *Industrial Bank of Wyandotte* v. *Reichert,* 251 Mich. 396, it was held that a statute prohibiting the creation of more industrial banks in this State was one which related to the public safety and, therefore, could be given immediate effect by the legislature. It was held that public safety had to do not only with the safety and protection of persons, but also of their property, and it was held that a well-ordered banking system had very much to do with the safety of property and was, therefore, an act which could be given immediate effect within the

rule established by *Attorney General, ex rel. Barbour,* v. *Lindsay, supra; People* v. *Stambosva, supra;* and *Newberry* v. *Starr, supra.*

In *Naudzius* v. *Lahr,* 253 Mich. 216 (74 A. L. R. 1189, 30 N. C. C. A. 179), an act abolishing the right of action of a guest passenger for ordinary negligence was before the court. Its validity was attacked upon the ground it was given immediate effect in violation of the Constitution, and it was held valid. It was said of the action of the legislature giving immediate effect:

"It is not the province of the court to attempt to accurately ascertain and adjudicate the immediate necessity of the terms of the particular. act, but if the subject of the law has a real and substantial relation to public peace, health, or safety, all doubt will be resolved in favor of the legislative judgment that it is 'immediately necessary.' "

The theory upon which this act was held valid was that it tended to discourage collusion and fraud in litigation, and was, therefore, obviously pertinent to public safety, and "we cannot say, beyond doubt, that it was not immediately necessary to that end."

In *Detroit Trust Co.* v. *Stormfeltz-Loveley Co.,* 257 Mich. 655 (88 A. L. R. 1263), the validity of Act No. 111, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 14380-1 *et seq.,* Stat. Ann. § 27.1161 *et seq.*), was attacked as unconstitutional, but the action of the legislature giving it immediate effect was upheld upon the theory it affected the public safety by giving protection to property, citing *Industrial Bank of Wyandotte* v. *Reichert, supra,* and *Naudzius* v. *Lahr, supra.*

In *Krench* v. *State of Michigan,* 277 Mich. 168, the validity of Act No. 280, Pub. Acts 1909, was

attacked upon the ground it was given immediate effect by the legislature. It was there said:

"Whether the act of 1909 (Act No. 280) should have been given immediate effect or not was for legislative determination and, in the absence of a showing of an abuse of the power, the legislative determination must stand."

In *Re Slush's Estate,* 279 Mich. 19, the validity of Act No. 108, Pub. Acts 1935 (Stat. Ann. § 27.2842), extending the statutory period for payment of debts and legacies, was attacked because it was given immediate effect. The court reviewed the authorities, and said:

"From the nature of the legislation involved in the case at bar, it is conclusive that, in the opinion of the legislature, the real estate market was greatly depressed; and that estates consisting largely of real estate should have more time in which to be closed, otherwise creditors and others interested in such estates would suffer. There can be no question as to the validity and necessity of such legislation, its object has a substantial relation to the protection of property rights.

"We are unable to say that the legislature exceeded its constitutional limitations in giving the act immediate effect."

If an act to amend the charter of the city of Detroit so as to provide for the municipal ownership, maintenance and operation of street railways within the city and within 10 miles of its limits, and to issue bonds therefor; an act providing regulations for the sale of vinous, malt, brewed, fermented, spirituous, or intoxicating liquors for medicinal, mechanical, chemical, scientific, and sacramental purposes; an act consolidating school districts, and creating a new school district; an act to prohibit the incorporation of any more industrial banks; an act

abolishing certain rights of action for negligence; an act providing for the equitable administration of mortgage trusts when the consummation of the object and purposes of the mortgage is not capable of accomplishment; an act to create a public domain commission, to provide for the appointment of the commissioners, to make an appropriation therefor, to supervise and in part take over the duties of the commissioner of the State land office, and for other purposes; and an act to extend the time for paying debts and legacies by estates of deceased persons for one year, were, as was held by this court, "acts immediately necessary for the preservation of the public health, peace, or safety," and properly given immediate effect, and the decisions so holding are to stand, then, the act under consideration was properly given immediate effect by the legislature.

Legislative action has been indicative of the construction placed upon the constitutional provision under consideration. To illustrate, the legislature in 1935 gave immediate effect to 172 public and local acts, occupying 332 pages of the session laws, and the 1937 legislature gave immediate effect to 224 public and local acts, covering 613 pages of the session laws.

As this case is presented to us, the questions involved are of law, and not of fact; there may have been sufficient reason for the legislature to give the act immediate effect; we may not inquire into the motives which actuated the members of the legislature, nor may we impugn the motives of a coordinate branch of the government; the immediate effect clause of the statute involved is valid; and the decree of the trial court is affirmed, but without costs, a public question being involved.

BUTZEL, C. J., and WIEST and NORTH, JJ., concurred with POTTER, J.

BUSHNELL, J. I am not in accord with the views expressed by Mr. Justice POTTER.

Plaintiffs herein were appointed members of the Michigan public utilities commission by the governor under the authority of Act No. 419, Pub. Acts 1919, as amended, 3 Comp. Laws 1929, § 11006 *et seq.* (Stat. Ann. § 22.1 *et seq.*), for terms expiring on June 13, 1939. Each of these appointments had been confirmed by the Senate. Two other members of the commission, who had been appointed for like terms, have submitted their resignations to the governor, which had not yet been accepted when plaintiffs' bill of complaint was filed on February 16, 1939. The term of office of the remaining member of the commission will also expire on the same date, but his appointment had not been confirmed by the Senate. The present commission, with changing membership, has been in continuous operation for about 20 years. Act No. 3, Pub. Acts 1939, which abolishes the Michigan public utilities commission and creates the Michigan public service commission, was adopted on February 9, 1939, was given immediate effect by a two-thirds vote of the members elected to each house, and signed by the governor on February 15th.

On the same day the governor appointed defendants members of the new commission.

It is claimed that the provision giving immediate effect to Act No. 3, Pub. Acts 1939, is unconstitutional and void because it is in violation of article 5, §§ 1 and 21, Constitution of 1908, quoted in part in my brother's opinion. Section 21 must be considered in connection with section 1 of article 5, which my brother quotes in part. But he fails to quote the first sentence of the controlling paragraph of section 1. That sentence reads:

"The second power reserved to the people is the referendum."

. I agree with Mr. Justice POTTER that it is not for us to look into the motives which actuated the legislature, but courts should not be oblivious to the obvious. The ancient quotation that, "The voice is Jacob's voice but the hands are the hands of Esau," seems applicable to the facts. The observation of Mr. Justice GRAVES in the case of *State, ex rel. Pollock,* v. *Becker,* 289 Mo. 660 (233 S. W. 641), is pertinent:

"Of these bills, which change in a way the system of justices courts in Jackson county, and cut down the number of such courts, and the number of the constables thereof, it is urged that they really go to the immediate preservation of the peace, health and safety of the great State of Missouri. Courts are not supposed to be blinded bats. Of current history courts take judicial knowledge. What all know, the courts must judicially know. The current history shows the real purpose of these laws, and we need not state that history. It is known to every member of the legislature, every judicial officer of the State, and every lawyer and citizen, who has read and kept abreast with the current history, made and now being made. To say that the purpose of these bills was to protect Missouri in some great, impending emergency relative to her peace, health or safety, is not only in the face of the bills themselves, but in the face of what her citizens know. We need go no further."

In that rather unusual case the issue presented was deemed so important that each of the seven members of that court of last resort expressed his view in a separate opinion. The question in that case was whether or not the court should issue a

writ of mandamus requiring the secretary of State to accept and file certain referendum petitions, the legislature having given immediate effect to the act in question. The writ issued.

The Constitution of 1850 only contains this statement, ''The legislative power is vested in a senate and house of representatives.'' Article 4, § 1.

This language was carried over into the Constitution of 1908, becoming article 5, § 1, of that Constitution. The Constitution of 1850 also provided in article 4, § 20:

''No public act shall take effect or be in force until the expiration of ninety days from the end of the session at which the same is passed, unless the legislature shall otherwise direct, by a two-thirds vote of the members elected to each house.''

See *Price* v. *Hopkin,* 13 Mich. 318.

The language contained in the Constitution of 1908 is quite different. It is:

''No act shall take effect or be in force until the expiration of ninety days and from the end of the session at which the same is passed, except that the legislature may give immediate effect to acts making appropriations and acts immediately necessary for the preservation of the public peace, health or safety by a two-thirds vote of the members elected to each house.'' Article 5, § 21.

Under the 1850 Constitution, acts could be given immediate effect merely by a two-thirds vote. Under the present Constitution the additional restriction that the act must be ''immediately necessary,'' et cetera, was added before a two-thirds vote could give it immediate effect. Not being satisfied with this limitation, the people in 1913 adopted an amend-

ment to article 5, § 1, of the Constitution, wherein they reaffirmed the limitation and imposed an additional reason for its observance by reserving to themselves the power of referendum.

The word "preservation" presupposes a real or existing emergency or danger; and the use of the words "immediately necessary" indicate a present impelling necessity with no other means at hand to obviate the danger.

"The people are the source of unlimited power. The Constitution is not a grant of power, but a limitation upon its exercise by the agents of the people who compose the legislative branch of government." *Attorney General* v. *Preston,* 56 Mich. 177, 179.

The constitutional provision for the referendum is meticulous in its details. This power reserved by the people should not be nullified.

I agree with Mr. Justice POTTER's "police power" comments, but it is not sufficient to find that the statute was enacted in the exercise of that power. There must be more. The act must be "immediately necessary," et cetera.

There is no question as to the right of the legislature to enact the statute in question. That is conceded. The only question is:

Did the legislature have the power to give this act immediate effect?

Many states hold the question to be a legislative one, but this court is committed to the doctrine that it will "exercise its constitutional authority to review all questions necessarily involved * * * which include the question involving the action of the legislature in giving immediate effect to the act under consideration." *Attorney General, ex rel. Barbour,* v. *Lindsay,* 178 Mich. 524, 534.

Unless we are prepared to overrule the *Lindsay Case* and let the burden be borne entirely by the legislature, we must critically examine the act in question. Any other attitude on our part might lead to blind assent to legislative subterfuge and nullification of the referendum clause of the Constitution.

It is suggested that this court has almost uniformly upheld immediate effect legislation, but an examination of the cases indicates that in each instance the court passed upon the question of "immediate necessity."

It is said that Mr. Justice Fellows, in his vigorous dissent in *Newberry* v. *Starr*, 247 Mich. 404, suggested that it was only necessary that the court must find there was no possibility of any connection between the preservation of the public peace, et cetera, and the act in question before it could be set aside. But Mr. Justice Fellows emphasized the controlling question of immediate necessity when he said that he was "unable to conclude from the record, from anything this court may judicially know, from anything a reasonably fertile imagination may bring to my mind, that it is immediately necessary for the preservation of the public peace or the public health or the public safety, that Royal Oak have a single school district a year before that city discovered its necessity."

The presumption that reasonable doubt must be resolved in favor of the validity of legislation does not preclude judicial inquiry into the substantial basis for the immediate necessity of the act. What reasonable and substantial basis for immediate effect can be found upon the face of the act? Is it in the language in section 4, which reads:

"The Michigan public utilities commission, having failed and refused to properly carry out the leg-

islative mandates with respect to public safety, and having failed and refused to properly enforce the provisions of the several acts conferring jurisdiction upon it with respect to the use of the various highways of the State in a safe and proper manner, is hereby abolished, and immediately upon the taking effect of this act said Michigan public utilities commission shall cease to exist, and the tenure of office of the members thereof and other employment of each employee of said commission shall be thereby terminated.''

This language charges the present members of the commission with misfeasance in public office, and that thereby the highways have been subjected to a use that is unsafe and improper. If these charges are true, as the legislature has asserted, it must be conceded that the members of the commission should be removed. But the Constitution provides methods for such removal. When the legislature is not in session the Governor, under the authority of article 9, § 7, can examine into the matter and remove the members of the commission for ''gross neglect of duty or for corrupt conduct in office, or any other misfeasance or malfeasance therein.'' When the legislature is in session, to use the language of Mr. Justice POTTER, when attorney general, in Opinions of the Attorney General, 1926–1928, p. 153, the legislature ''alone may examine into the condition and administration of any public office, and the acts of any public officer, elective or appointive, and remove them from office by impeachment.''

The procedure is controlled by article 9, §§ 1, 2, 3, of the Constitution.

Though Mr. Justice POTTER's opinion points out numerous changes in the new act, none of them are substantial changes. What doubt exists in anyone's mind that must be resolved in favor of the constitu-

tionality of the immediate effect clause of the act? His opinion does not find, or try to find, that any one or all of these changes meet, or even tend to meet, any need for immediate action. The intent and purpose of the new act are the same as the old. The new commission exercises precisely the same powers as the old.

"The Michigan public service commission shall in all respects be considered to be the successor in office of the Michigan public utilities commission in respect to all of the powers or duties now vested in or imposed upon said public utility commission." Act No. 3, § 5, Pub. Acts 1939.

Under the circumstances, does any need arise for the application of the reasonable doubt rule? Notwithstanding any legislative declaration to the contrary, it cannot be said that the new act furnishes any possibility of greater preservation of the public peace, health or safety than the old. The effect of the two acts is substantially the same and there can be no "immediate necessity."

Nowhere in the act is there anything to indicate that an "immediate necessity" exists, save the alleged necessity for removal of the old commissioners who, if such necessity is found to exist, can only be constitutionally removed by other methods.

Perhaps the language of section 7, whereby there was "appropriated from the general fund the further sum of $10,000 for the creation, organization and operation" of the new public service commission from the effective date of the act to June 30, 1939, was intended to be a sufficient shield to avert judicial inquiry into the immediate necessity of the act. Under the reasoning of my brother's opinion, does the appropriation of any amount satisfy the constitu-

tional requirement so that any act whatever can be given immediate effect? If this be an attempt to circumvent the constitutional limitations, it is of no importance because of the severance clause of the act (section 9). This is not, in its entirety, an act making an appropriation.

The validity of the act is not challenged, but it cannot become effective under the provisions of the Constitution until 90 days after the final adjournment of the present session of the legislature. Article 5, §§ 1, 21.

The decree of the trial court should be reversed, and one should be entered here declaring the clause giving immediate effect to the act to be unconstitutional and void.

SHARPE, CHANDLER and McALLISTER, JJ., concurred with BUSHNELL, J.

CHANDLER, J. I concur in the opinion of Mr. Justice BUSHNELL, holding the immediate effect clause of Act No. 3, Pub. Acts 1939, unconstitutional.

In framing article 5, § 21 of the Constitution of 1908, and in its adoption by the people, it is clear that both the framers thereof and the people adopting it intended to put a stop to the practice of giving immediate effect to acts by a mere two-thirds vote, which was permitted under the Constitution of 1850, and to restrict the authority of the legislature in giving immediate effect to statutes to "acts making appropriations and acts *immediately necessary* for the preservation of the public peace, health or safety." We find that when this provision was before the last constitutional convention for consideration, the following explanation of its purpose was made a matter of record by Mr. Holmes, a member

of that convention, who, in speaking for his committee, said:

"This section has been somewhat changed from the original with a view of preventing so many measures going through the legislature and being given immediate effect. The committee has provided in this section that only in cases of *absolute emergency* shall any bill be given immediate effect and then only by a two-thirds vote of each house." 1 Debates, Constitutional Convention (1908), p. 195.

The case of *Attorney General, ex rel. Barbour,* v. *Lindsay,* 178 Mich. 524, is cited and quoted from quite extensively in the opinion of Justice Potter. This was apparently the first pronouncement by this court on the question here involved after the adoption of the Constitution of 1908, and in all of the opinions written since that time, where a similar question has been involved, this court has relied upon and quoted with approval from that case until the opinion in the instant one, written by Justice Potter, which seems more in accord with the dissenting opinion of Justice Ostrander in the *Lindsay Case.* Justice Ostrander, with the concurrence of Justice Bird, said in his dissent:

"Whether an·act of the legislature is one immediately necessary for the preservation of the public peace, health, or safety is a question to be finally determined by the legislature. Three-fifths* of the members of each house having given the opinion that the act in question is one immediately necessary for the preservation of the public peace, health, or safety, no court may review or set aside such determination. This conclusion is based upon the language employed in the Constitution as well as upon the fact that whether an act is immediately

* See footnote, *ante,* 526.—Reporter.

necessary for the preservation of the public peace, health, or safety is a proposition involving, in each case in which it is presented, a question of public policy."

The prevailing opinion in the *Lindsay Case* holds that the question as to whether the legislature has acted within or without the bounds of its constitutional powers is one for *judicial determination.* In such a case, the courts are bound to exercise their constitutional functions, primary among which is the duty to determine whether the legislative action in question is or is not constitutional.

The cases of *Newberry* v. *Starr,* 247 Mich. 404 and *Naudzius* v. *Lahr,* 253 Mich. 216 (74 A. L. R. 1189, 30 N. C. C. A. 179), as well as others decided in this jurisdiction, are in accord with the majority opinion written in *Attorney General, ex rel. Barbour,* v. *Lindsay, supra.*

We appreciate the fact that the courts in many other jurisdictions are in accord with the dissenting opinion of Justice OSTRANDER above referred to, and the opinion of Justice POTTER is replete with citations and quotations from these jurisdictions, notwithstanding the fact that this court has established the rule that the question as to whether the legislature has acted within or without the bounds of its constitutional powers is one for judicial determination. We are giving no consideration to the determination of this question in other jurisdictions. We prefer to stand by the rule laid down by Justice WIEST in the case of *Motor Bankers Corporation* v. *C. I. T. Corporation,* 258 Mich. 301, in which he bound this court by the following language:

"We have examined but need not review cases from other jurisdictions for we have established our

own rule with reference to instruments in the nature of a chattel mortgage.''

Applying the foregoing to the instant case, we say, ''We have examined but need not review cases from other jurisdictions for we have established our own rule with reference to the question as to whether the legislature has acted within or without the bounds of its constitutional powers, and have held that it is one for judicial, not legislative, determination.'' Where it appears by the act itself that the question of the preservation of the public health, peace or safety has some real or substantial relation to the act in question, it is the duty of the court to find that the immediate effect clause attached to said act is constitutional, but where it is not made to appear by the act itself that the immediate effect clause is necessary for the preservation of public peace, health or safety, then it is the duty of the court so to determine judicially.

''The mere fact that the legislature labels the giving of a premium with the sale of gasoline a 'destructive trade practice,' does not make it such nor render the practice subject to prohibition. While there is a presumption that an act of the legislature is valid, nevertheless, the courts have the power to determine whether, as a matter of fact, the prohibition bears a reasonable relationship to the public health, safety, morals and general welfare.'' *People* v. *Victor,* 287 Mich. 506.

The reasons assigned by Justice POTTER as to what the legislature might have had in mind in giving the act immediate effect for the purpose of preserving public peace, health or safety seem to us to be highly speculative. The real reason for the legislature giving the statute immediate effect is clearly apparent from a reading of that part of section 4 quoted by Justice BUSHNELL. This language

shows beyond peradventure the real reason for the immediate effect clause, namely, to remove instanter the present public utilities commissioners from their positions. A legal method is provided for the removal of such officers for misfeasance, malfeasance or misconduct in public office, and this court should not countenance an illegal method to accomplish this object. To hold otherwise would be giving judicial sanction to the removal of officials from public office by the legislative branch of the government in a manner which wholly disregards the provisions of article 5, § 21 and article 9, § 7 of the Constitution, as well as article 5, § 1 thereof, which provides for referendum upon proper petition of the electors.

That the legislature has in the past, and that they will in the future, ignore the constitutional provision and fail to restrict the operation of the immediate effect clause to emergency legislation is shown by the record of the 1937 legislature which passed 354 statutes and gave immediate effect to 224 of them. We do not think any other legislature will show any material difference in the proportion of laws given immediate effect. A perusal of these acts which were given immediate effect because the legislature deemed them necessary for the preservation of public health, peace or safety shows the absurdity of leaving this a question solely for legislative and not judicial determination.

In commenting upon *Home Building & Loan Ass'n* v. *Blaisdell,* 290 U. S. 398 (54 Sup. Ct. 231, 88 A. L. R. 1481), Justice FEAD in *Virginian Joint Stock Land Bank of Charleston* v. *Hudson,* 266 Mich. 644, said:

"Contrary to much lay opinion, the *Blaisdell* decision does not purport to set aside the Constitution and to validate all sorts of legislation because. it is given an emergency label. On the contrary, the

decision itself is meticulously circumscribed and the final and effective pronouncement is more restricted than some of the argument would seem to permit.

"The outstanding propositions elucidated in the case are that both the statute and its administration by the court must be reasonable in order that there be no conflict with the Constitution; that both the existence and continuance of the emergency are judicial questions; that the relief permitted and afforded must be appropriate to the emergency; and that compensation to the mortgagee or purchaser for withholding possession is an essential to valid relief.  *  *  *

"In applying the moratorium statute the court has no greater right or authority, by construction or administration, to extend the relief beyond constitutional limits than has the legislature by enactment of the law."

We cannot conceive how it can be seriously contended that the appropriation provision contained in the statute makes the same an appropriation act within the meaning of article 5, § 21 of the Constitution.

Section 7 of the statute allocates the sum of $10,000 for the "creation, organization and operation of said public service commission from the effective date of this act to June 30, 1939." The allocation thus made is for a specific purpose, to be used during a certain specified period of time, commencing upon the date the statute becomes effective and terminating June 30, 1939. The provision becomes operative only and not until the act becomes effective, and cannot be used as a means of causing that event to occur.

Sharpe, and McAllister, JJ., concurred with Chandler, J.

Bushnell, J. I concur in the additional reasons given by Mr. Justice Chandler.